**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **EOLAS TECHNOLOGIES INCORPORATED,** | |
| **Plaintiff,** | **Civil Action No. 6:15-cv-01038-RWS** |
| **v.** | **LEAD CASE** |
| **AMAZON.COM, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**EOLAS TECHNOLOGIES INCORPORATED'S MOTION FOR SUMMARY
JUDGMENT OF NO INVALIDITY BASED ON 35 U.S.C. § 101**

1180589

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     STATEMENT OF ISSUE TO BE DECIDED.......................................................1

III.    STATEMENT OF UNDISPUTED FACTS ..........................................................1

IV.     LEGAL STANDARD................................................................................................4

        A.      Patentable Subject Matter Generally. ........................................................4

        B.      The *Mayo*/*Alice* Two-Step Framework......................................................4

                1.      *Mayo*/*Alice* Step One: Ineligible Concept?..................................4

                2.      *Mayo*/*Alice* Step Two: Inventive Concept? ................................6

        C.      The Machine-or-Transformation Test.........................................................7

        D.      Challengers Must Prove Invalidity By Clear and Convincing
                Evidence...........................................................................................................7

        E.      Patentable Subject Matter is an Issue of Law for the Court. ..................8

V.      ARGUMENT..............................................................................................................8

        A.      The Asserted Claims Are Not Directed to a Patent-Ineligible
                Concept. ...........................................................................................................8

        B.      The Asserted Claims Are Directed to an Inventive Concept................11

        C.      The Asserted Claims Pass the Machine-or-Transformation Test. ........13

        D.      The USPTO, Well-Aware of Subject Matter Eligibility Issues,
                Correctly Determined the Subject Matter Eligibility of the Asserted
                Claims. ............................................................................................................14

VI.     CONCLUSION...........................................................................................................14

1180589

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alice Corp. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ........................................................................................ passim

*Bilski v. Kappos*,
    130 S. Ct. 3218 (2010) ........................................................................................1, 4, 7

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    No. 2:14-cv-911-JRG-RSP, 2016 U.S. Dist. LEXIS 35663 (E.D. Tex. Mar. 20,
    2016) ........................................................................................................6, 7, 10, 14

*DataTern, Inc. v. MicroStrategy, Inc.*,
    Nos. 11-1970-FDS & 11-12220-FDS, 2015 U.S. Dist. LEXIS 118530 (D.
    Mass. Sep. 4, 2015) ........................................................................................................8

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ........................................................................6, 7, 12

*Enfish, LLC v. Microsoft Corp.*,
    No. 2015-1244, 2016 U.S. App. LEXIS 8699, at *10 (Fed. Cir. May 12, 2016) ...........4, 5, 10

*Genband US LLC v. Metaswitch Networks Corp.*,
    No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 2651 (E.D. Tex. Jan. 8,
    2016) ........................................................................................................................8

*Genband US LLC v. Metaswitch Networks Corp.*,
    No 2:14-cv-33-JRP-RSP, 2016 U.S. Dist. LEXIS 37946 (E.D. Tex. Jan. 6,
    2016) ........................................................................................................................6, 9

*Klaustech, Inc. v. Admob, Inc.*,
    No. C 10-05899 JSW, 2015 U.S. Dist. LEXIS 118532 (N.D. Cal. Aug. 31,
    2015) ........................................................................................................................7

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ........................................................................................1, 6, 12

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S. Ct. 2238 (2011) ........................................................................................8

*Network Congestion Sols., LLC v. U.S. Cellular Corp.*,
    Nos. 1:14-cv-903-SLR & 1:14-cv-904-SLR, 2016 U.S. Dist. LEXIS 36884
    (D. Del. Mar. 22, 2016) ........................................................................................11, 13

1180589

*SimpleAir, Inc. v. Google Inc.*,
　No. 2:14-cv-00011-JRG, 2015 U.S. Dist. LEXIS 129623 (E.D. Tex. Sep. 25,
　2015) ......................................................................................................... passim

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
　601 F.3d 1319 (Fed. Cir. 2010)...................................................................8, 13

*Smartflash LLC v. Apple, Inc.*,
　621 Fed. Appx. 995 (Fed. Cir. 2015) (Newman, J., concurring in part and
　dissenting in part)..............................................................................................14

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
　No. 1:13-cv-1534-SLR/SRF, 2016 U.S. Dist. LEXIS 48092 (D. Del. Apr. 11,
　2016) ..............................................................................................6, 7, 11, 13

*TimePlay, Inc. v. Audience Entm't LLC*,
　No. CV 15-05202 SJO, 2015 U.S. Dist. LEXIS 174781 (C.D. Cal. Nov. 10,
　2015) ............................................................................................10, 11, 13

*TQP Dev., LLC v. Intuit Inc.*,
　No 2:12-cv-180-WCB, at *18-19 (E.D. Tex. Feb. 19, 2014) ......................................7

*Treehouse Avatar LLC v. Valve Corp.*,
　No. 1:15-cv-427-SLR, 2016 U.S. Dist. LEXIS 36883 (D. Del. Mar. 22, 2016) ...............11, 13

*Ultramercial, Inc. v. Hulu, LLC*,
　772 F.3d 709 (Fed. Cir. 2014)...............................................................4, 7, 11, 13

**STATUTES**

35 U.S.C. § 101........................................................................................1, 2, 3, 4

35 U.S.C. § 282(a) .......................................................................................8

**OTHER AUTHORITIES**

79 Fed. Reg. 74618 (Dec. 16, 2014) ..................................................................2

80 Fed. Reg. 45429 (July 30, 2015)...................................................................2

iii

Eolas Technologies Incorporated ("Eolas") moves for summary judgment of no invalidity of U.S. Patent No. 9,195,507 (the "'507 patent") based on 35 U.S.C. § 101.

## I.    INTRODUCTION

The United States Patent and Trademark Office ("USPTO") issued the '507 patent on November 24, 2015, after more than four years of examination. Ex. 1. During prosecution of the '507 patent, the USPTO issued subject matter eligibility memoranda and guidelines to its examiners in light of the *Bilski*, *Mayo*, and *Alice* decisions. And those examiners rejected numerous applications on subject matter eligibility grounds—including more than 10% of the patent applications in the same Art Unit as the '507 patent. Yet, the '507 patent was never rejected under 35 U.S.C. § 101. The decision by the USTPO not to reject the '507 patent on § 101 grounds makes sense: the '507 patent claims non-abstract systems and methods for serving distributed interactive applications on the World Wide Web. The '507 patent claims pass muster under both steps of the *Mayo*/*Alice* test. Defendants[1] cannot meet their substantial burden to show invalidity by clear and convincing evidence.

## II.    STATEMENT OF ISSUE TO BE DECIDED

Are Defendants able to show that the '507 patent is invalid under 35 U.S.C. § 101 by clear and convincing evidence?

## III.    STATEMENT OF UNDISPUTED FACTS

1.      On June 28, 2010, the U.S. Supreme Court issued its opinion in *Bilski v. Kappos*, 130 S. Ct. 3218 (2010).

2.      On March 20, 2012, the U.S. Supreme Court issued its opinion in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012).

3.      On March 4, 2014, the Deputy Commissioner for Patent Examination Policy issued a memorandum to the USPTO's Patent Examining Corps with the subject "2014 Procedure

---

[1] Herein, "Google" refers to Google Inc., "Amazon" to Amazon.com, Inc., "Walmart" to Wal-Mart Stores, Inc. and Wal-Mart Stores Texas, LLC, and "Defendants" to Google, Amazon, and/or Walmart.

1

1180589

for Subject Matter Eligibility Analysis of Claims Reciting or Involving Laws of Nature/Natural Principles, Natural Phenomena, and/or Natural Products." Ex. 2.

4.    On June 19, 2014, the U.S. Supreme Court issued its opinion in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

5.    On June 25, 2014, the Deputy Commissioner for Patent Examination Policy issued a memorandum to the USPTO's Patent Examining Corps with the subject "Preliminary Examination Instructions in view of the Supreme Court Decision in *Alice Corporation Pty. Ltd. v. CLS Bank International, et al.*" Ex. 3.

6.    On December 16, 2014, the USPTO published "Interim Guidance on Patent Subject Matter Eligibility." 2014 Interim Guidance on Patent Subject Matter Eligibility, 79 Fed. Reg. 74618 (Dec. 16, 2014) (attached as Ex. 4). "This Interim Eligibility Guidance offers a comprehensive view of subject matter eligibility in line with Alice Corp, Myriad, Mayo, and the related body of case law, and is responsive to the public comments received pertaining to the March 2014 Procedure and the June 2014 Preliminary Instructions" *Id.* at 74619

7.    On March 27, 2015, the examiner issued an office action in the prosecution of U.S. Patent Application No. 13/292,434, which ultimately issued as the '507 patent. Ex. 5. The examiner allowed some claims, objected to some claims, and rejected the remaining claims. *Id.* at 2. In the office action, the examiner did not raise the issue of validity under 35 U.S.C. § 101. *See generally id.*

8.    On July 15, 2015, the USPTO published "July 2015 Update on Subject Matter Eligibility." July 2015 Update on Subject Matter Eligibility, 80 Fed. Reg. 45429 (July 30, 2015) ("Dated: July 15, 2015") (attached as Ex. 6). "The July 2015 Update: Subject Matter Eligibility includes a new set of examples and discussion of various issues raised by the public comments, and is intended to assist examiners in applying the 2014 Interim Patent Eligibility Guidance during the patent examination process." *Id.*; *see also* Ex. 7.

9.    On July 17, 2015, the examiner and patentee spoke by phone. Ex. 8. The examiner noted that the parties "DISCUSSED 101 ISSUES WITH CLAIMS 34-35" and that "CLAIMS

2

1180589

66-72 AND 74-78 LACK A PERIOD AT THE END OF THE CLAIM." *Id.* Prosecution claims 34-35 issued as claims 13-14 of the '507 patent and are not asserted in this case.

10. On July 22, 2015, the examiner issued a notice of allowance in the prosecution of the application that resulted in the '507 patent. Ex. 9. In the notice of allowance, the examiner did not raise the issue of validity of the claims under 35 U.S.C. § 101, but the examiner did propose amendments to several claims, including prosecution claims 34 and 35. *See generally id.*

11. On August 20, 2015, the patentee provided additional amendments to claims 34 and 35 of U.S. Patent Application No. 13/292,434 as "[s]everal words intended to be deleted from claims 34-35 were inadvertently included in those claims. This amendment deletes those words and presents no new issues and requires no additional search." Ex. 10.

12. On September 10, 2015, the examiner issued a notice of allowance in the prosecution of the application that resulted in the '507 patent. Ex. 11. In the notice of allowance, the examiner did not raise the issue of validity of the claims under 35 U.S.C. § 101. *See generally id.*

13. The USPTO never rejected the application leading to the '507 patent under 35 U.S.C. § 101. Ex. 5; Ex. 9; Ex. 11.

14. The USPTO issued the '507 patent on November 24, 2015. Ex. 1.

15. Eolas filed these lawsuits asserting the '507 patent against Defendants on November 24, 2015. Dkt. 1, No. 6:15-cv-1038 (E.D. Tex. Nov. 24, 2015); Dkt. 1, No. 6:15-cv-1039 (E.D. Tex. Nov. 24, 2015); Dkt. 1, No. 6:15-cv-1040 (E.D. Tex. Nov. 24, 2015).

16. Claims 19-27, 29, 31-40, 42, and 44-45 of the '507 patent are asserted against Amazon and Walmart. Ex. 12 at 2. Claims 19-45 of the '507 patent are asserted against Google. *Id.* Herein, these claims are referred to as the "Asserted Claims."

17. Amazon, Google, and Walmart allege that the '507 patent is invalid based on 35 U.S.C. § 101. Ex. 13 at 3; Dkt. 46 ¶ 23; Dkt. 51 ¶ 2.

3

1180589

## IV.   LEGAL STANDARD

### A.   Patentable Subject Matter Generally.

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized three exceptions to this broad prescription of patentable subject: (1) laws of nature; (2) physical phenomena; and (3) abstract ideas. *Bilski*, 130 S. Ct. at 3225. "While these exceptions are not required by the statutory text, they are consistent with the notion that a patentable process must be 'new and useful.'" *Id.*

### B.   The *Mayo/Alice* Two-Step Framework.

To apply the above-described general guidance regarding patentable subject matter, the Supreme Court in *Mayo,* and then in *Alice* "set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355 (citing *Mayo*, 132 S. Ct. at 1296-97).

#### 1.   *Mayo/Alice* Step One: Ineligible Concept?

The first step of the *Mayo/Alice* test, sometimes called the ineligible concept step, considers "whether the claims at issue are directed to one of those patent-ineligible concepts," such as laws of nature, natural phenomena, and abstract ideas. *Id.* "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). "That formulation plainly contemplates that the first step of the inquiry is a meaningful one, i.e., that a substantial class of claims are *not* directed to a patent-ineligible concept." *Enfish, LLC v. Microsoft Corp.*, No. 2015-1244, 2016 U.S. App. LEXIS 8699, at *10 (Fed. Cir. May 12, 2016) (Ex. 14).

Under this first step, a court "asks whether the focus of the claims is on the specific asserted improvement in computer capabilities (i.e., the self-referential table for a computer database) or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at *12. The Federal Circuit has held that "improvements in computer-related technology are [not] inherently abstract." *Id.* at *11. Nor are "claims directed to soft-

4

ware, as opposed to hardware, [] inherently abstract." *Id.* at *11-12. "Software can make non-abstract improvements to computer technology just as hardware improvements can, and sometimes the improvements can be accomplished through either route." *Id.* at *12. "Much of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and processes." *Id.* at *20-21.

The Federal Circuit has cautioned against oversimplifying the claimed invention under *Mayo*/*Alice* step one. "[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Id.* at *15-16 (citing *Alice*, 134 S. Ct. at 2354). As the Federal Circuit recently noted, "[t]he 'directed to' inquiry, therefore, cannot simply ask whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon—after all, they take place in the physical world." *Id.* at*10 (citing *Mayo*, 132 S. Ct. at 1293). "Rather, the 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Id.* at *11 (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).

This District agrees that over-simplification of claims should be avoided. "The question before the Court, according to the Ineligible Concept Step of the *Alice* test, is not whether the Court is able reach into a patent and extract an abstract idea from which to determine patent-eligibility; such an exercise would render the Ineligible Concept Step a mere formality." *SimpleAir, Inc. v. Google Inc.*, No. 2:14-cv-00011-JRG, 2015 U.S. Dist. LEXIS 129623, at *12, *16 (E.D. Tex. Sep. 25, 2015). "Almost every patent claim could be characterized as 'abstract' in a sense because the purpose of a claim is to capture a range of possible implementations." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-cv-911-JRG-RSP, 2016 U.S. Dist. LEXIS 35663, at *11 (E.D. Tex. Mar. 20, 2016) (citing *Genband US LLC v. Metaswitch Networks Corp.*, No 2:14-cv-33-JRP-RSP, 2016 U.S. Dist. LEXIS 37946, at *27 (E.D. Tex. Jan. 6, 2016)).

5

1180589

### 2.    *Mayo/Alice* Step Two: Inventive Concept?

If the answer to the first *Mayo/Alice* step is "no," the patent is directed to patentable sub-ject matter. If, however, the answer to the first *Mayo/Alice* step is "yes," a second step is evaluat-ed. In this second step, also called the inventive concept step, the court looks to the additional elements in the claims—"both individually and 'as an ordered combination.'" *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1296-97). This is done "to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1296-97). This is "a search for an 'inventive concept'--*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to signif-icantly more than a patent upon the [ineligible concept] itself.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1296-97). Claims may become patent-eligible where they "include[] not only a law of nature but also several unconventional steps . . . that confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300. Inventions flowing from one of the exceptions may be patentable if the invention is "an application" of such an exception and does not "preempt substantially all uses of the fundamental principle." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, No. 1:13-cv-1534-SLR/SRF, 2016 U.S. Dist. LEXIS 48092, at *9 (D. Del. Apr. 11, 2016).

"Distinguishing between claims that recite a patent-eligible invention and claims that add too little to a patent-ineligible abstract concept can be difficult, as the line separating the two is not always clear." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014). It is important to distinguish between claims that "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet" (may not be patent eligible) versus claims that are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer net-works" (may be patent eligible). *Id.* at 1257, 1258 ("Unlike the claims in *Ultramercial*, the claims at issue here specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily trig-gered by the click of a hyperlink.").

6

Under the *Mayo*/*Alice* step two, it is not dispositive that a human can perform some steps or that the claims use standard or well-known technologies. "That [an accused infringer] can simplify the invention enough to find a human counterpart (or argue that a human could somehow perform the steps of the method) does not suffice to make the concept abstract, as '[a]t some level, "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."' *SRI*, 2016 U.S. Dist. LEXIS 48092, at \*17 (quoting *Alice*, 134 S. Ct. at 2354 (quoting *Mayo*, 132 S. Ct. at 1293)). Moreover, "[t]he Court is not asked to determine whether the steps or limitations can be performed or implemented using standard or well-known technologies, but rather whether 'the function performed by the computer at each step of the process is "[p]urely conventional."'" *SimpleAir*, 2015 U.S. Dist. LEXIS 129623, at \*15-16.

### C. The Machine-or-Transformation Test.

Although it is not "the sole test for deciding whether an invention is a patent-eligible 'process,'" *Bilski*, 130 S. Ct. at 3227, the machine-or-transformation test "can provide a 'useful clue' in the second step of the *Alice* framework," *Ultramercial*, 772 F.3d at 716 (citing *Bilski*, 130 S. Ct. at 3227-28; *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012)). Courts in this District and elsewhere continue to utilize the machine-or-transformation test. *E.g.*, *Core Wireless*, 2016 U.S. Dist. LEXIS 35663, at \*13; *TQP Dev., LLC v. Intuit Inc.*, 2014 U.S. Dist. LEXIS 20077, No 2:12-cv-180-WCB, at \*18-19 (E.D. Tex. Feb. 19, 2014); *Klaustech, Inc. v. Admob, Inc.*, No. C 10-05899 JSW, 2015 U.S. Dist. LEXIS 118532, at \*5 (N.D. Cal. Aug. 31, 2015). Under the machine-or-transformation test, a claimed process can be patent-eligible if it is "tied to a particular machine or apparatus" or "transforms a particular article into a different state or thing." *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332 (Fed. Cir. 2010).

### D. Challengers Must Prove Invalidity By Clear and Convincing Evidence.

Patents are presumed valid. 35 U.S.C. § 282(a). The burden to establish invalidity is placed on the party asserting invalidity. *Id.* This is true even in the context of challenges to patentability of the claimed subject matter. *SimpleAir*, 2015 U.S. Dist. LEXIS 129623, at \*12, \*16.

7

1180589

An invalidity defense under § 282 must be proved by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). This clear and convincing evidence burden applies to validity challenges made as to the patentability of subject matter. *DataTern, Inc. v. MicroStrategy, Inc.*, Nos. 11-1970-FDS & 11-12220-FDS, 2015 U.S. Dist. LEXIS 118530, at *24-25 (D. Mass. Sep. 4, 2015) (citing *i4i*, 131 S. Ct. at 2242).

> **E.      Patentable Subject Matter is an Issue of Law for the Court.**

The issue of patentable subject matter is for the Court. *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 2651, at *8-10 (E.D. Tex. Jan. 8, 2016) (refusing to allow patentee's expert to testify at trial about subject matter eligibility). This is because "'[t]he ultimate question of patent eligibility under § 101 is an issue of law. . .'" and "[t]he Court is responsible for deciding disputed questions of law." *Id.* at *8-9 (quoting *BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig. v. Ambry Genetics Corp.*, 774 F.3d 755, 759 (Fed. Cir. 2014)). Moreover, expert testimony can be unnecessary and unhelpful in evaluating whether a patent covers patentable subject matter. *Id.* at *9-10 (noting that the patentee's expert's testimony was unhelpful and that "the Federal Circuit has consistently disfavored reliance on expert testimony as the basis for legal conclusions" (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 991 n.4 (Fed. Cir. 1995)).

## V.      ARGUMENT

> **A.      The Asserted Claims Are Not Directed to a Patent-Ineligible Concept.**

None of the Asserted Claims are directed to laws of nature, natural phenomena, or abstract ideas. *Alice*, 134 S. Ct. at 2355. The Asserted Claims are directed to ideas specific to computers, the World Wide Web, and the Internet. As the '507 patent specification explains, the patent "relates generally to manipulating data in a computer network, and specifically to retrieving, presenting and manipulating embedded program objects in distributed hypermedia systems." Ex. 1 at 1:23-26. The patent "provides a method for running embedded program objects in a computer network environment," *id.* at 6:45-47, and "allows a user at a client computer connected to a network to locate, retrieve and manipulate objects in an interactive way," *id.* at 6:57-59.

"Objects may be text, images, sound files, video data, documents or other types of information that is presentable to a user of a computer system." *Id.* at 2:17-19. By using server computers, the patent enables a Web user "to use a vast amount of computing power beyond that which is contained in the user's client computer." *Id.* at 6:65-67. As the patent teaches, an "application server 220 can advantageously use server computer 204's computing resources to perform the viewing transformation much more quickly than could application client 210 executing on client computer 200." *Id.* at 10:60-64.

The independent Asserted Claims (*i.e.*, claims 19, 32, and 45) set boundaries for the non-abstract invention and its relation to computers, the Web, and the Internet. In each, the claimed servers, including the "two or more [distributed application/separate] computers connected to the World Wide Web," interact with "client computer[s] [connected to the World Wide Web/containing a World Wide Web browser]." Ex. 1 at 21:58-22:38 (discussing interaction in claim 19); *id* at 23:25-24:2 (discussing interaction in claim 32); *id.* at 24:56-25:37 (discussing interaction in claim 45). As the independent Asserted Claims make plain, the invention is not abstract, but is tied to serving distributed interactive applications on the World Wide Web. *Alice*, 134 S. Ct. at 2355. Nor is it problematic that the claims may refer to classes of components like servers and computers. *Genband*, 2016 U.S. Dist. LEXIS 37946, at *27-28 (discussing how items, such as cups, which are plainly not abstract, are classes of components).

The dependent Asserted Claims (*i.e.*, claims 20-31, 33-44) further demonstrate the non-abstract nature of the Asserted Claims and provide additional limitations related to computers, the Web, and the Internet. These dependent claims include plainly non-abstract aspects, such as:

- "HTML tag[s]" (claims 20 and 33);
- "coordination of at least part of the distributed application" (21, 24, 34, and 37);
- "one or more coordination computers" (22 and 35);
- "viewing transformations to enable the interaction with the object" (23 and 36);
- "two or more of the distributed application computers" (25, 26, 38, and 39);

9

1180589

- "transmit[ting] the results of the computations onto the World Wide Web distributed hypermedia network" (27 and 40);

- "to enable a user to perform interaction with at least part of a word processor application while being displayed within the one or more World Wide Web pages" (28 and 41);

- "to enable a user to perform interaction with at least part of a database application while being displayed within the one or more World Wide Web pages" (29 and 42);

- "to enable a user to perform interaction with at least part of a spreadsheet application while being displayed within the one or more World Wide Web pages" (30 and 43); and

- "to enable a user to perform interaction with at least part of an application to view a series of delta encoded and compressed video images while being displayed within the one or more World Wide Web pages" (31 and 44).

Recent case law demonstrates that the Asserted Claims are not abstract. The Asserted Claims, like those in *Enfish*, are related to "improvement in computer capabilities." 2016 U.S. App. LEXIS 8699, at *12. In *Core Wireless*, the claims were directed to (in the accused infringer's view) "displaying an application summary window while the application is in an unlaunched state." 2016 U.S. Dist. LEXIS 35663, at *11-12. The Court noted that such concepts "are specific to devices like computers and cell phones." *Id.* at *12. The same is true here: the Asserted Claims are directed to serving distributed World Wide Web applications in a way that is "specific to devices like computers" and "'improve[s] the functioning of the computer itself.'" *Id.* (quoting *Alice*, 134 S. Ct. at 2359). In fact, the problems addressed by the Asserted Claims are non-existent outside the context of computers, the World Wide Web, and the Internet. A similar result was reached in *TimePlay, Inc. v. Audience Entm't LLC*, No. CV 15-05202 SJO (JCx), 2015 U.S. Dist. LEXIS 174781 (C.D. Cal. Nov. 10, 2015), where the invention was held not abstract as it was "by definition limited to the field of multi-player gaming and which requires the use of multiple hardware components--unlike the claims in *Bilski* and *Alice* which, at least in theory, could be performed without a computer." *Id.* at *18. The Asserted Claims also have no non-computer application and do not "preempt substantially all uses of [a] fundamental principle." *SRI*, 2016 U.S. Dist. LEXIS 48092, at *9.

10

Numerous other cases, from this District and elsewhere, illustrate that the Asserted Claims do not cover abstract ideas. This Court held claims not abstract in *SimpleAir* where the claims "are directed toward patent-eligible methods and systems of 'using a central broadcast server' to package and transmit 'data from an online information source to remote computing devices.'" 2015 U.S. Dist. LEXIS 129623, at *11 (noting that defendants "ignore significant claim limitations, encompasses the invention claimed by the Patents-in-Suit"). Moreover, Judge Robinson held claims not abstract in *Treehouse Avatar LLC v. Valve Corp.*, No. 1:15-cv-427-SLR, 2016 U.S. Dist. LEXIS 36883 (D. Del. Mar. 22, 2016) where "the claims at bar are directed to users selecting and modifying customizable characters (avatars) in real time on CE sites, as well as storing and retrieving such characters within an information network." *Id.* at *35. Similarly, the claims in *Network Congestion Sols., LLC v. U.S. Cellular Corp.*, Nos. 1:14-cv-903-SLR & 1:14-cv-904-SLR, 2016 U.S. Dist. LEXIS 36884 (D. Del. Mar. 22, 2016) were not abstract where the claims are "directed to 'alleviating congestion in a communication network' and recite steps used to perform the method for a flow of data to and from end user devices connected to a network through communication devices." *Id.* at *23-24. The claims in these cases are similar to the Asserted Claims: the claims are directed to ideas related to computers, the World Wide Web, and the Internet. Moreover, the problems addressed by the Asserted Claims are non-existent outside the context of computers, the World Wide Web, and the Internet.

### B. The Asserted Claims Are Directed to an Inventive Concept.

Although the Asserted Claims are directed to a patent-eligible concept under Step One (and it is not necessary to analyze the claims under Step Two), the claims are also directed to an inventive concept related to specific, useful applications on computers, the Web, and the Internet. *Alice*, 134 S. Ct. at 2355. As discussed *supra*, the Asserted Claims include numerous elements (and combinations thereof) "that [are] 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon [an ineligible concept] itself.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1296-97). Moreover, the '507 patent "confine[s] the claims to a particular, useful application of the [, here non-abstract,] principle." *Mayo*, 132 S. Ct. at 1300. For example,

11

1180589

the Asserted Claims include aspects related to receiving requests over the Web and responding to those requests with information usable by Web browsers to allow user interaction with distributed interactive applications. Ex. 1 at 21:58-22:38 (claim 19); *id* at 23:25-24:2 (32); *id.* at 24:56-25:37 (45). As discussed *supra*, the dependent Asserted Claims add additional aspects.

Recent case law shows that the Asserted Claims meet *Alice*/*Mayo* Step Two. In *DDR*, the Federal Circuit considered claims directed at "retaining website visitors" by incorporating the "look and feel" of a third party website at a host website such that visitors can buy products from the third party without entering the third party's website. 773 F. 3d at 1257-58. The claims were "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR*, 773 F.3d at 1257, 1258. The same is true here: the Asserted Claims are "rooted in computer technology," and include specific methods and systems for serving distributed interactive applications on the Web.

Cases from this District also demonstrate that the Asserted Claims are directed to an inventive concept. This Court held that the claims in *SimpleAir* (discussed *supra*) met step two as they "disclose particular solutions for the problem of the '[l]ack of notification of information delivery when offline' that '(1) [do] not foreclose other ways of solving the problem, and (2) recite[] a specific series of steps that result[] in a departure from the routine and conventional' way of managing digital rights." 2015 U.S. Dist. LEXIS 129623, at *15. Here, too, the claims relate to a specific problem (*i.e.*, distributed interactive applications on the Web), do not foreclose other ways to solve the problem, and recite specific steps and limitations that are not routine.

Cases from outside this District further support that the Asserted Claims are directed to an inventive concept. In *Treehouse* (discussed *supra*), the District of Delaware held that the claims met step two of the *Mayo*/*Alice* test where "[t]he claims at bar provide a specific series of steps" related to customizing characters for different users of sites. 2016 U.S. Dist. LEXIS 36883, at *35-36. The Asserted Claims include steps tailored to the context of serving distributed interactive applications on the World Wide Web. In *Network Congestion*, the court similarly held that step two was met where "the claim as a whole (the equipment recited and steps claimed)

12

1180589

provides the requisite degree of specificity" and "the claims are directed to a solution for a problem that arises in the computer context." 2016 U.S. Dist. LEXIS 36884, at *24-25. Here, the claims and the '507 patent are directed to a computer-specific problem: serving distributed interactive applications on the Web. Finally, in *TimePlay* (discussed *supra*), Judge Otero held that step two was met where "the individual components of the claimed system operate together to improve the functioning of multi-player gaming systems in a manner that was sufficiently novel to satisfy the Patent and Trademark Office Examiner." 2015 U.S. Dist. LEXIS 174781, at *29. Here, the USPTO deemed the '507 patent novel. Statements of Fact ¶¶ 10, 12.

### C.    The Asserted Claims Pass the Machine-or-Transformation Test.

The Asserted Claims also pass the machine-or-transformation test, which "can provide a 'useful clue' in the second step of the *Alice* framework," *Ultramercial*, 772 F.3d at 716 (citations omitted). As discussed *supra*, under the machine-or-transformation test, a claimed process can be patent-eligible if it is "tied to a particular machine or apparatus" or "transforms a particular article into a different state or thing." *SiRF Tech.*, 601 F.3d at 1332.

The Asserted Claims are "tied to a particular machine or apparatus." In each independent claim, the claimed servers, including the "two or more [distributed application/separate] computers connected to the World Wide Web," interact with "client computer[s] [connected to the World Wide Web/containing a World Wide Web browser]." Ex. 1 at 21:58-22:38 (discussing interaction in claim 19); *id* at 23:25-24:2 (discussing interaction in claim 32); *id.* at 24:56-25:37 (discussing interaction in claim 45).[2] This is akin to *Core Wireless*, which involved an "invention [] directed to a machine--a 'computing device comprising a display screen'--and as discussed *supra*, the limitations of the claim make no sense outside the context of that specific machine." 2016 U.S. Dist. LEXIS 35663, at *13. Here too, the invention makes "no sense outside the context of" distributed interactive applications on the World Wide Web.

---

[2] And every other Asserted Claim (*i.e.*, 20-31, 33-44) depends on one of these independent claims (*i.e.*, 19, 32, 45). As discussed *supra*, these dependent claims include additional aspects in the context of distributed interactive applications on the World Wide Web.

**D.      The USPTO, Well-Aware of Subject Matter Eligibility Issues, Correctly De-termined the Subject Matter Eligibility of the Asserted Claims.**

The USPTO—well aware of recent judicial guidance in the area—decided not to reject the Asserted Claims on subject matter eligibility grounds, undercutting Defendants' subject matter eligibility defense. The Supreme Court's recent guidance started with *Bilski* in 2010, and continued with *Mayo* and *Alice* in 2012 and 2014, respectively. Statement of Facts ¶¶ 1, 2, 4. Beginning in early 2014, just before the Supreme Court issued its *Alice* decision, the USPTO began promulgating formal memoranda and examination guidelines to its examiners regarding subject matter eligibility. Statement of Facts ¶¶ 3, 5, 6, 8. The USPTO promulgated at least four such formal memorandums and examination guidelines to its examiners between March 2014 and July 2015. *Id.* And as publicly available research shows, such as in Exhibit 15 from the Fenwick & West law firm,[3] the USPTO's examiners were regularly issuing subject matter eligibility rejections in the January 2012–May 2015 timeframe on grounds.

The data shows that applications in the '507 patent's Art Unit, 2454, were rejected on subject matter eligibility grounds between 9.90% and 18.83% of the time between January 2015 and May 2015. Ex. 5 (showing the '507 patent's Art Unit was 2454); 15 (showing rejection rates between 9.90% and 18.83% for Art Units in the 2400 range). Despite an office action and two notices of allowance in 2015, the USPTO never rejected the application leading to the '507 patent (and, specifically, the Asserted Claims) on subject matter eligibility grounds. Ex. 5; Ex. 9; Ex. 11. This confirms the patentability of the Asserted Claims.

**VI.      CONCLUSION**

Eolas respectfully requests that its Motion be granted.

---

[3] Judge Newman cited related research from Fenwick & West in a recent concurrence/dissent-in-part. *Smartflash LLC v. Apple, Inc.*, 621 Fed. Appx. 995, 1006 (Fed. Cir. 2015) (Newman, J., concurring in part and dissenting in part) (citing June 20, 2015 Fenwick & West research).

14

1180589

Dated: May 31, 2016.

**MCKOOL SMITH, P.C.**
/s/ *Kevin L. Burgess*
Kevin L. Burgess
Lead Attorney
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
John B. Campbell
Texas State Bar No. 24036314
jcampbell@mckoolsmith.com
James Quigley
Texas State Bar No. 24075810
jquigley@mckoolsmith.com
Jennifer Van Dusen
Texas State Bar No. 24087087
jvandusen@mckoolsmith.com
**McKool Smith, P.C.**
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Mike McKool
Texas State Bar No. 13732100
mmckool@mckoolsmith.com
**McKool Smith, P.C.**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
McKool Smith, P.C.
104 East Houston Street
Suite 300
Marshall, TX 75670
Telephone: (903) 923-9002
Telecopier: (903) 923-9099

**ATTORNEYS FOR PLAINTIFF EOLAS TECHNOLOGIES INCORPORATED**

1180589

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served via email on all counsel of record on May 31, 2016.

*/s/ James Quigley*
James Quigley

1180589