**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| **EOLAS TECHNOLOGIES INCORPORATED,** | |
| **Plaintiff,** | Civil Action No. 6:15-cv-01038-RWS |
| **v.** | LEAD CASE |
| **AMAZON.COM, INC.,** | JURY TRIAL DEMANDED |
| **Defendant.** | |

| | |
|---|---|
| **EOLAS TECHNOLOGIES INCORPORATED,** | |
| **Plaintiff,** | Civil Action No. 6:15-cv-01039-RWS |
| **v.** | CONSOLIDATED CASE |
| **GOOGLE INC.,** | JURY TRIAL DEMANDED |
| **Defendant**. | |

| | |
|---|---|
| **EOLAS TECHNOLOGIES INCORPORATED,** | |
| **Plaintiff,** | Civil Action No. 6:15-cv-01040-RWS |
| **v.** | CONSOLIDATED CASE |
| **WAL-MART STORES, INC., AND WAL-MART STORES TEXAS, LLC,** | JURY TRIAL DEMANDED |
| **Defendants**. | |

**DEFENDANTS' MOTION FOR LEAVE TO SUPPLEMENT**
**THEIR PATENT RULE 3-3 INVALIDITY CONTENTIONS AND RULE 3-4(b)**
**DOCUMENT PRODUCTION**

## I.    INTRODUCTION

Pursuant to Patent Rule ("P.R.") 3-6(b), Defendants respectfully move for leave to supplement their P.R. 3-3 Invalidity Contentions with the two claim charts set forth in Exhibit A, which relate to two prior art systems (Lawrence Berkeley National Laboratory ("LBNL") and NPSNET) previously identified in Defendants' original P.R. 3-3 Invalidity Contentions served on June 2, 2016.  These supplemental charts were provided to Eolas on September 21, 2016, and do not introduce any new prior art systems; rather, they merely include additional disclosure regarding two systems already identified by Defendants.   The additional disclosure comes entirely from materials discovered after service of Defendants P.R. 3-3 Invalidity Contentions and produced to Eolas on September 21, 2016, contemporaneously with the service of Defendants' Preliminary Election of Asserted Prior Art pursuant to General Order 13-20. Defendants further seek leave to supplement their P.R. 3-4(b) document production with these later discovered materials, which further evidence the functionality of the previously identified prior art systems.

After meeting and conferring for more than a month, Eolas ultimately objected to the supplemental materials asserting merely that the "uncertainty introduced by Defendants' late disclosure" was somehow "severely prejudicial to Eolas and needlessly drives up the costs and expenses for all parties and the Court."  However, in view of Defendants' timely identification of these prior art systems, their prompt service of supplemental claim charts and production of the supplemental prior art materials, and the more than four months that remained before discovery and expert report deadlines in this case, Eolas has suffered *no* prejudice.  Accordingly, good cause exists for allowing Defendants to supplement their P.R. 3-3 Invalidity Contentions and 3-4(b) document production as provided herein.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Defendants Timely Served Their P.R. 3-3 and 3-4(b) Disclosures and Thereafter Diligently Sought to Further Investigate the Prior Art in Order to Comply with General Order 13-20 by September 21, 2016

On June 2, 2016, Defendants timely served their P.R. 3-3 Invalidity Contentions, which identified and charted 46 anticipatory references and another 62 combination references comprising in excess of 240 pages.  Declaration of Michael D. Powell ("Powell Decl.") ¶ 2. Within these materials, Defendants included invalidity claim charts for three publications related to NPSNET—a distributed virtual reality environment developed by the Naval Post Graduate School in Monterey, California, during the time period of 1991 to 1994.  Ex. B.  Although separately charted in the P.R. 3-3 Invalidity Contentions, each of these references evidences the functionality of the NPSNET system.  In addition, Defendants had included an invalidity claim chart for a publication by W. Johnston and others relating to work done at LBNL in 1991 and 1992 involving another distributed system providing network access to and interaction with three-dimensional human brain scan images.  Ex. C.

In due course following service of Defendants' P.R. 3-3 and P.R. 3-4(b) disclosures on June 2, 2016, Defendants continued to investigate and evaluate the substantial prior art that had been produced and charted.  This investigation focused on getting the information needed to decide which prior art to eliminate so as to narrow to 18 references no later than September 21, 2016 as provided by the Court's Docket Control Order and General Order 13-20.

As part of the vetting process, Defendants also sought to locate authors associated with various of the prior art materials previously produced and charted for the purpose of identifying potential testifying witnesses and possibly identifying additional written materials to corroborate the functionality of these prior art systems.  Powell Decl. ¶ 4.  Only during the final stages of this

process did defense counsel learn of supplemental materials supporting the NPSNET and LBNL systems. *Id.*

### B. The Supplemental NPSNET Materials Further Evidence Functionality of the NPSNET System That Defendants Assert as a Single Prior Art System Under General Order 13-20

On September 2, 2016, Google's outside counsel in this case learned that additional NPSNET-related materials had been collected by different outside counsel in a prior action against Google brought by ART+COM.  Powell Decl. ¶ 5.  These additional materials, together with the previously disclosed Brutzman, Macedonia, and Zeswitz prior art publications, reflect common work done by master's and doctoral students at the Naval Postgraduate School (NPS) into a networked, interactive virtual world system dubbed NPSNET, under the supervision of Michael Zyda.[1]  *Id.*  Though Brutzman details an application of NPSNET to autonomous underwater vehicles and Macedonia and Zeswitz outline specific technical features of NPSNET (including its networking capabilities and the specific distributed interactive simulation protocol used in NPSNET), Defendants learned through these newly discovered materials that the basics of the NPSNET system had earlier been described by David Pratt, the first student to work under Michael Zyda on NPSNET.  *Id.*  In addition, Defendants learned that the development of the system was described in at least two articles by Dr. Zyda, whereas additional applications and technical features of the NPSNET system were described in six additional publications by other students supervised by Dr. Zyda as NPSNET.  Ex. A; *see also* Powell Decl. ¶ 5.[2]  All of this NPSNET-related work was done at the direction of Michael Zyda and NPS and related to a

---

[1] General Order 13-20 provides:  "For purposes of this Order, a prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference, as shall the closely related work of a single prior artist."  Thus, the several NPSNET-related publications together comprise just one of the narrowed 18 prior art "references."

[2]  The bulk of Defendants' supplemental P.R. 3-4(b) production (approx. 4,600 pages out of 7,700 total pages) comprises source code for the NPSNET system.

single distributed system used to sustain a networked virtual environment that would be used for the training of U.S. military personnel.  *Id.*

C. **The Supplemental LBNL Materials Further Evidence Functionality of the LBNL Fully Distributed Computing System That Defendants Assert as a Single Prior Art System Under General Order 13-20**

After continuing and diligent efforts, Defendants also located and later met with William Johnston and David Robertson regarding the distributed computing work done at LBNL in the 1991-1995 timeframe, funded by the Department of Energy and disclosed in part in the Johnston prior art.  At an in-person meeting on September 12, 2016, between Mr. Johnston and Mr. Robertson and Google's counsel, Messrs. Johnston and Robertson disclosed that their earlier work at LBNL, which centered on the application of distributed computing to brain scan images, had also resulted in a web-based interactive application for frog dissection known as the LBNL Whole Frog Project, now available at http://froggy.lbl.gov/virtual/.  *See* Powell Decl. ¶ 6.  This LBNL prior art distributed computing system described in the supplemental claim chart attached as Exhibit A provides a web-based application of Johnston and Robertson's distributed computing work that was cited and charted in Defendants' Invalidity Contentions.[3]

D. **During the Meet and Confer Process, Eolas Could Not Identify Any Particularized Prejudice from Defendants' Supplemental Invalidity Contentions and Related Document Production**

On September 21, 2016, soon after becoming aware of the relevant supplemental material, Defendants served supplemental charts and related documents upon Eolas and asked Eolas in

---

[3]  Though the frog dissection application is visually distinctive from the previously charted brain scan application, Messrs. Johnston and Robertson confirmed that the back-end system was the same for both applications and that the creation of the WWW-based frog dissection application was a natural outgrowth of the their earlier work once the Mosaic browser had become popular. Powell Decl. ¶ 6.  Messrs. Johnston and Robertson confirmed that the work for the earlier brain scan application and the frog dissection application had been funded under a single grant from the Department of Energy.  *Id.*  Thus, as with NPSNET, the several LBNL-related publications together comprise just one of the narrowed 18 prior art "references."

writing whether it would object to those supplemental charts and documents.  Exs. D-E.  On September 29, Eolas requested additional information about the supplemental materials, specifically the basis for asserting that the charted LBNL and NPSNET references each "can be counted as one for the purposes of General Order 13-20" and what good cause there was for these new disclosures.  Ex. F.  Defendants provided this information on October 12, explaining how and when the two sets of materials (one for NPSNET and one for LBNL) were discovered, how they related to the previously disclosed prior art, and why the various publications should be deemed "associated" within the meaning of General Order 13-20.  Ex. G.  After further correspondence (Ex. H), the parties met and conferred on October 28, 2016, wherein Defendants reiterated the basis for treating the additional materials as "associated" within the meaning of General Order 13-20.  Powell Decl. ¶ 14.  In response, Eolas was unable to articulate any basis why the supplemental NPSNET and LBNL materials were not "associated" with the references previously identified by Defendants or to provide any legal authority to support its position.  *Id.*  Moreover, Eolas certainly did not articulate any particularized prejudice caused by the supplemental charts and documents and merely restated its prior assertion that the "uncertainty" of Defendants' supplemental disclosure would somehow impact its prosecution of its claims against Defendants.  *Id.*

### E.     Eolas Has Yet To Serve Any Prior Art Related Discovery

Eolas' claims of prejudice from the timing of Defendants' supplementation ring particularly hollow because Eolas has not done any prior art discovery to date.  Eolas has served no third-party subpoenas directed to any of the prior art witnesses identified on Defendants' Rule 26 disclosures nor has it served any document subpoenas on entities or individuals likely to have relevant documents or other materials related to the prior art systems disclosed in Defendants'

P.R. 3-3 Invalidity Contentions and 3-4(b) prior art document production.  Eolas has likewise served no discovery on Defendants related to prior art.

## III.     ARGUMENT

Patent Rule 3-6(b) allows a party to amend or supplement its invalidity contentions "by order of the Court, which shall be entered only upon a showing of good cause."  P.R. 3-6(b). Courts in this District have broad discretion to grant leave and consider four factors to determine whether a party has shown good cause to amend its invalidity contentions: (1) the reason for amendment after the Court's deadline for invalidity contentions and whether the party has been diligent, (2) the importance of the amendment, (3) the potential prejudice in allowing the amendment, and (4) the availability of a continuance to cure such prejudice.  *See Arbitron, Inc. v. Int'l Demographics Inc.*, No. 2:06-CV-434 (TJW), 2008 WL 4755761, at *1 (E.D. Tex. Oct. 29, 2008) (citing *S & W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)).  All of these factors weigh in favor of granting Defendants leave to amend their Invalidity Contentions.

### A.     Defendants Have Been Diligent

Defendants' supplement to their Invalidity Contentions stems from their discovery, as part of their ongoing investigation into prior art to the '507 patent, of additional materials related to prior art publications disclosed as part of the Invalidity Contentions served by Defendants on June 2, 2016.  In particular, Defendants worked diligently to locate authors associated with the NPSNET and LBNL materials previously produced and charted for the purpose of identifying potential testifying witnesses and possibly identifying additional written materials to corroborate the functionality of these prior art systems.

In the process of this due diligence, with respect to NPSNET, Defendants worked to locate and contact the authors of the Brutzman, Macedonia, and Zeswitz prior art references

6

previously produced and charted.  In preparing to reach out to these witnesses, on September 2, 2016, Google's counsel learned that additional NPSNET-related materials had been collected by different counsel in a prior action against Google brought by ART+COM.  Powell Decl. ¶ 5. Google's counsel promptly reviewed the materials to ensure compliance with any applicable protective orders concerning the materials and produced them to Eolas less than three weeks later, on September 21, 2016, together with a supplemental claim chart outlining how the NPSNET system invalidates the asserted claims.  *Id.* ¶ 7.

With respect to LBNL, Defendants located and later met with William Johnston and David Robertson in early September 2016 regarding the distributed computing work they did at LBNL in the 1991-1995 timeframe, as exemplified by the reference cited as Johnston prior art in Defendants' Invalidity Contentions.  *Id.* ¶ 6.  In the course of those discussions, at an in-person meeting on September 12, 2016, between Mr. Johnston and Mr. Robertson and Google's counsel, Messrs. Johnston and Robertson disclosed that their earlier work at LBNL, which centered on the application of distributed computing to brain scan images, had also resulted in a web-based interactive application for frog dissection known as the LBNL Whole Frog Project and that both this project and the work described in the references cited in Defendants' Invalidity Contentions had been funded under a single grant from the Department of Energy.  *Id.*  Following this discovery, Defendants promptly prepared a supplemental invalidity chart for the LBNL prior art system and produced supplemental materials related to this system discovered as a result of the conversations with Mr. Johnston and Mr. Robertson.  *Id.* ¶ 8.

The supplemental chart and materials were served on Eolas on September 21, 2016, contemporaneously with Defendants' notice of narrowed prior art, and less than two weeks after

discovery of this prior art system, which was nevertheless related to work disclosed in Defendants' Invalidity Contentions as the Johnston prior art. *Id.* ¶¶ 6, 8.

In light of this newly acquired evidence, Defendants seek leave to include these additional materials in their P.R. 3-3 and 3-4(b) disclosures, which (together with the previously disclosed references Brutzman, Macedonia, Zeswitz, and Johnston) describe invalidating prior art systems NPSNET and LBNL.  General Order 13-20 specifically contemplates that a single prior art system may be evidenced by any number of associated references that describe that system.  Defendants explained to Eolas precisely how each of the associated NPSNET references and each of the associated LBNL references demonstrate the functionality of the respective systems as a whole prior to the earliest alleged filing date of the '507 Patent.  The various NPSNET references are "associated" because the virtual reality work done by David Pratt and others at NPS was done in pursuit of a common objective under the supervision of Michael Zyda. Likewise, for LBNL, the various references are "associated" because the distributed computing work done by Johnston and others at LBNL during 1991 through 1995 was done in pursuit of a common objective and pursuant to common funding from the U.S. Department of Energy.  In response, Eolas provided no legal authority for interpreting "associated" in any unusually restrictive fashion or otherwise articulated any basis as to why the respective NPSNET and LBNL materials were not "associated" within the meaning of General Order 13-20.

Defendants have exercised diligence in investigating and developing their invalidity positions and only obtained this new evidence regarding prior art systems related to publications previously disclosed in Defendants' Invalidity Contentions subsequent to service of those Invalidity Contentions.  This Court has previously granted leave to allow a party to amend its invalidity contentions to include newly discovered prior art references under similar

circumstances.  *See, e.g.*, *Motio, Inc. v. Avnet, Inc.*, No. 4:12-CV-647, 2015 WL 5952530, at *2-3, *5 (E.D. Tex. Oct. 13, 2015) (granting motion to amend invalidity contentions to add a prior art system and references describing that system discovered by defendant subsequent to service of invalidity contentions).

The first factor thus weighs in favor of granting leave to amend.

**B.      The LBNL and NPSNET Prior Art Systems Are Important to Defendants' Invalidity Defenses**

Defendants' Invalidity Contentions based on both the LBNL and NPSNET prior art systems are important to Defendants' defense.  *Motio*, 2015 WL 5952530, at *3 (holding that "this factor weighs heavily to a showing of good cause" based on finding that the newly asserted prior art system "appears to be exceedingly relevant and may very well be of paramount importance in this matter").  As outlined in the supplemental charts attached as Exhibit A, each of the LBNL and NPSNET prior art systems invalidates the asserted claims of the '507 patent. Indeed, the supplemental materials on LBNL reflect a web-based application of Johnston's work on distributed computing.   Given Eolas' focus on the interactivity allegedly enabled by embedding content on web pages and on the '507 patent's alleged invention of distributed applications, the web-based nature of the LBNL interactive frog dissection application that employed multiple server computers and the corroborating references charted in the LBNL claim chart are extremely important to Defendants' ability to mount a full defense against Eolas' infringement claims.   Similarly, the additional NPSNET references' outlining of additional applications for the NPSNET system and the source code disclosure for that system are crucial to corroborate the distributed nature of the NPSNET system and the fact that this system predates the alleged invention of the '507 patent strongly supports a finding of invalidity under 35 U.S.C.

§§ 102 and/or 103. Moreover, neither the NPSNET nor LBNL systems were considered previously by the U.S. Patent and Trademark Office or in any prior district court proceeding.

Because the supplemental material concerning NPSNET and LBNL may dispose of Eolas' asserted claims and render the asserted '507 patent invalid, the second factor heavily favors granting leave to amend.

### C.    Eolas Will Not Be Prejudiced by the Amendment

This Court has long recognized that while a showing of diligence on the part of the moving party is important, the Court retains discretion to permit amendments even when diligence is minimal or even lacking altogether where there is a lack of prejudice to the non-moving party. *See, e.g.*, *Arbitron*, 2008 WL 4755761, at *1 (indicating good cause can be based on lack of prejudice); *Computer Acceleration Corp. v. Microsoft Corp.* 481 F. Supp. 2d 620, 625-26 (E.D. Tex. 2007) (permitting Microsoft to amend its invalidity contentions to include a patent issued ***to Microsoft*** and despite finding the diligence factor weighed against amendment). Thus, while Defendants' efforts in investigating and disclosing additional prior art materials have been diligent, the complete absence of prejudice to Eolas should be an independent basis for a finding of good cause.

As to both LBNL and NPSNET, Eolas is not prejudiced by Defendants' supplement to their Invalidity Contentions. Fact discovery remains open for more than two more months, until January 24, 2017, and opening expert reports are not due until January 26, 2017 while rebuttal reports are due on February 23, 2017. (Dkt. 165.) To date, Eolas has not noticed a single prior art deposition despite having received Defendants' Invalidity Contentions on June 2, 2016 and Defendants' Preliminary Election of Asserted Prior Art (together with the new LBNL and NPSNET materials and supplemental charts) on September 21, 2016. Thus, Eolas will be able to investigate the LBNL and NPSNET systems (including the supplemental claim charts and

materials it has had in its possession since September 21, 2016) in the same time frame it investigates other prior systems identified in Defendants' Preliminary Election of Asserted Prior Art and prepares a rebuttal report on invalidity, and Eolas will therefore have equal opportunity to address all asserted prior art systems in its rebuttal expert reports, which are due more than three months from now.  Indeed, Defendants' proactive investigation and disclosure of this art helps Eolas in evaluating this art in advance of the upcoming deadlines.

Moreover, Defendants had notified Eolas of one publication evidencing work related to the LBNL system (Johnston) and of three publications evidencing the capabilities of the NPSNET system (Brutzman, Macedonia, and Zeswitz) in their Invalidity Contentions. Defendants had also notified Eolas that their investigation into the prior art disclosed in the Invalidity Contentions was ongoing.  Defendants' prompt disclosures of recently discovered publications and materials related to the previously disclosed prior art systems lessens any prejudice Eolas might claim.  Eolas may not agree with Defendants' contentions that these prior art systems invalidate the asserted claims of the '507 patent, but it will not be prejudiced by the proposed amendment.  *See Motio*, 2015 WL 5952530, at *3-4 (granting leave to amend invalidity contentions in part because "the addition of [a new prior art system] will not dramatically prejudice Plaintiff").

On the other hand, Defendants would be severely prejudiced if this Court were to deny the instant motion.  As discussed above, the LBNL and NPSNET prior art systems and the supplemental disclosures and references Defendants seek leave to add are important to their defense and may be completely dispositive of Eolas' infringement claims.

Therefore, the third factor also weighs in favor of amendment.

### D.      No Continuance of Any Deadlines Is Required

No adjustment to this Court's schedule is required if leave to amend is granted.  The dates set by the Court's Docket Control Order for close of fact discovery and opening and rebuttal expert reports are 2-4 months away.  As a result, no proceedings or other deadlines will be affected.

The fourth factor also weighs in favor of amendment.

## IV.    CONCLUSION

Defendants have established good cause to amend their Invalidity Contentions pursuant to P.R. 3-6(b), and therefore respectfully request that the Court grant them leave to supplement their P.R. 3-3 Invalidity Contentions and 3-4(b) document production to add additional disclosure based on the newly discovered LBNL and NPSNET materials, which anticipate and/or render obvious the asserted claims of the '507 patent as identified in the proposed supplemental claim charts (Ex. A).


Date:  November 23, 2016                    Respectfully submitted,

                                            By: */s/ Richard G. Frenkel (w/ permission)*
                                            Jennifer H. Doan
                                            Texas Bar No. 08809050
                                            Joshua R. Thane
                                            Texas Bar No. 24060713
                                            J. Randy Roeser
                                            Texas Bar No. 24089377
                                            HALTOM & DOAN
                                            6500 Summerhill Road, Suite 100
                                            Texarkana, TX 75503
                                            Tel:  903.255.1000
                                            Fax:  903.255.0800
                                            Email: jdoan@haltomdoan.com
                                            Email: jthane@haltomdoan.com
                                            Email: rroeser@haltomdoan.com

Douglas E. Lumish
California State Bar No. 183863
Email: doug.lumish@lw.com
Richard G. Frenkel
California State Bar No. 204133
Email:  rick.frenkel@lw.com
Jeffrey G. Homrig
California State Bar No. 215890
Email: jeff.homrig@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Tel: 650.328.4600
Fax: 650.463.2600

Joseph H. Lee
California State Bar No. 248046
Email:  joseph.lee@lw.com
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel:  714.540.1235
Fax:  714.755.8290

Grant Kinsel
California State Bar No. 172407
Email: gkinsel@perkinscoie.com
PERKINS COIE, LLP
1201 3rd Street, 39th Floor
Seattle, WA 98112
Tel: 206.395.3615

ATTORNEYS FOR DEFENDANT
AMAZON.COM, INC.

By:  */s/ Michael D. Powell*
Charles K. Verhoeven
CA Bar No. 170151
charlesverhoeven@quinnemanuel.com
David A. Perlson
CA Bar No. 209502
davidperlson@quinnemanuel.com
derektang@quinnemanuel.com
Lindsay M. Cooper
CA Bar No. 287125

13

lindsaycooper@quinnemanuel.com
Felipe Corredor
CA Bar No. 295692
felipecorredor@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: 415-875-6600
Facsimile: 415-875-6700

Michael D. Powell
CA Bar No. 202850
mikepowell@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: 650-801-5000
Facsimile: 650-801-5100

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
**POTTER MINTON**
110 N. College Avenue, Suite 500
Tyler, Texas 75702
Telephone:  903-597-8311
Facsimile:  903-593-0846

ATTORNEYS FOR DEFENDANT
Google Inc.

By: */s/ Bijal V. Vakil (w/ permission)*
Bijal V. Vakil
CA State Bar No.:  192878
(Admitted to practice in E.D. Texas)
Shamita D. Etienne-Cummings
CA State Bar No.:  202090
(Admitted to practice in E.D. Texas)
Thomas C. Flynn
CA State Bar No.:  257945
(admitted to practice in E.D. Texas)
Eric E. Lancaster
CA State Bar No.:  244449
(Admitted to practice in E.D. Texas)

Allen W. Wang
CA State Bar No.:  278953
(admitted to practice in E.D. Texas)
WHITE & CASE LLP
3000 El Camino Real
Five Palo Alto Square 9th Floor
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
Email: bvakil@whitecase.com
Email: setienne@whitecase.com
Email: allen.wang@whitecase.com
Email: tflynn@whitecase.com

J. Thad Heartfield
State Bar No. 09346800
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, TX  77706
Telephone:  (409) 866-3318
Facsimile:   (409) 866-5789
Email: thad@heartfieldlawfirm.com

Attorneys for Defendants
Wal-Mart Stores, Inc. and
Wal-Mart Stores Texas, LLC

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Pursuant to Local Rule CV-5(c), all counsel of record were served with a true and correct copy of the foregoing document by electronic mail on November 23, 2016.

*/s/ Michael D. Powell*
Michael D. Powell

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that on October 28, 2016, I met and conferred via telephone conference with counsel for Eolas.  Counsel for Eolas stated that Eolas intends to oppose the relief requested.  Accordingly, counsel has complied with the meet and confer requirement pursuant to Local Rule CV-7(h) and the Motion is opposed by Eolas.

*/s/ Michael D. Powell*
Michael D. Powell