# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **EOLAS TECHNOLOGIES INCORPORATED,** | § § § | |
| **Plaintiff,** | § § | |
| **vs.** | § § | **CASE NO. 6:15-cv-01038** |
| | § § | **[LEAD CASE]** |
| **AMAZON.COM, INC.,** | § § § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion construes the disputed claim terms in U.S. Patent No. 9,195,507 ("the '507 Patent") asserted by Plaintiff Eolas Technologies Incorporated ("Plaintiff") against Defendants Amazon.com, Inc., Google Inc., Wal-Mart Stores, Inc. and Wal-Mart Stores Texas, LLC (collectively, "Defendants"). On November 2, 2016, the parties presented oral arguments on the disputed claim terms at a *Markman* hearing. For the reasons stated below, the Court **ADOPTS** the following constructions.

## BACKGROUND

Plaintiff asserts a single patent, the '507 Patent, against the Defendants. The Court previously construed terms in patents related to the '507 Patent in *Eolas Technologies, Inc. v. Adobe Systems, Inc.*, 810 F. Supp. 2d 795 (E.D. Tex. 2011); *Eolas Technologies, Inc. v. Adobe Systems, Inc.*, Cause No. 6:09-CV-446, 2011 WL 11070303 (E.D. Tex. Sep. 23, 2011); and *Eolas Technologies, Inc. v. Adobe Systems, Inc.*, No. 6:09-CV-446, 2012 WL 369265 (E.D. Tex. Feb. 3, 2012) (collectively, "*Eolas I*"). At trial, the asserted claims of the related patents were

found invalid, and the Federal Circuit affirmed without opinion. *Eolas Techs., Inc. v. Amazon.com, Inc.*, 521 Fed. App'x 928 (Fed. Cir. July 22, 2013).

In addition, the Northern District of Illinois construed terms in a patent related to the '507 Patent. *See Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325 (Fed. Cir. 2005). The related patent was found not invalid and infringed, and damages were awarded. *Id.* at 1332. The Federal Circuit affirmed the district court's claim constructions but remanded the case on other grounds. *Id.* at 1341.

The '507 Patent generally relates to methods and systems for manipulating data in a computer network, and specifically for retrieving, presenting and manipulating embedded program objects on the Internet. '507 Patent at 1:23–26. The patent states that the prior art browsers often required launching external software to have data objects presented in a comprehensible way. *Id.* at 6:30–33. The patent describes an invention that allows a user to interact with a remote object within a browser. *Id.* at 6:57–65. Plaintiff asserts claims 19–45 of the '507 Patent against Defendants. Docket Nos. 33 at 7, 34 at 7, 38 at 7.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.' " *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313–14; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as

understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.' " *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.' " *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *see Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning than it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343–44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example,

"[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.' " *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (internal quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## Section 112(b): Indefiniteness

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112(b). "A claim is invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, 'fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention.' " *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1377 (Fed. Cir. 2015) (quoting *Nautilus, Inc. v. Biosig*

*Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014)). Whether a claim meets this definiteness requirement is a matter of law. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344 (Fed. Cir. 2007). A party seeking to invalidate a patent must overcome a presumption that the patent is valid. *See* 35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2243 (2011); *U.S. Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996). As such, the burden is on the challenging party to prove the patent's invalidity by clear and convincing evidence. *Microsoft*, 131 S. Ct. at 2243; *U.S. Gypsum Co.*, 74 F.3d at 1212. The ultimate issue is whether someone working in the relevant technical field could understand the bounds of a claim. *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010).

When a term of degree is used in a claim, "the court must determine whether the patent provides some standard for measuring that degree." *Biosig Instruments, Inc.*, 783 F.3d at 1378 (internal quotation marks omitted). Likewise, when a subjective term is used in a claim, "the court must determine whether that patent's specification supplies some standard for measuring the scope of the [limitation]." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005).

## Section 112(f): Means-Plus-Function Limitations

Asserted patents may contain means-plus-function limitations that require construction. Where a claim limitation is expressed in means-plus-function language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112(f). *Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). In relevant part, § 112(f) mandates that "such a claim limitation be construed to cover the corresponding structure . . . described in the specification and equivalents thereof." *Id.* (citing 35 U.S.C. § 112(f)). Accordingly, when faced with means-plus-function limitations, courts "must turn to the written

description of the patent to find the structure that corresponds to the means recited in the [limitation]." *Id.*

"It is well settled that a claim limitation that actually uses the word 'means' invokes a rebuttable presumption that § 112, ¶ 6 applies. In contrast, a claim term that does not use 'means' will trigger the rebuttable presumption that § 112, ¶ 6 does not apply." *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003) (citations omitted). The Federal Circuit elaborated that "[w]hen a claim term lacks the word 'means,' the presumption can be overcome and § 112, ¶ 6 will apply if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (quotations omitted). "The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.*

## I.    Agreed Terms

| Claim Term | Agreed Construction |
|---|---|
| "object"<br><br>(used at least in claims 19, 32, 45 and dependents thereof) | "text, images, sound files, video data, documents and/or other types of information that is presentable to a user of a computer system" |
| "server computer comprising a processor; and a memory device which stores a plurality of instructions, which when executed by the processor, enables the server to"<br><br>(used at least in claim 19 and dependents thereof) | no construction necessary |

## II.    Claim Construction of Disputed Terms

1.  **"interactive-content application"** (used at least in asserted claims 19, 32, 45 and dependents thereof)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "an application that enables a user to interact with content"*[1] <br><br> Although Plaintiff does not believe this term should be construed as a means-plus-function element, if the Court finds that this term should be construed as a means-plus-function element, Plaintiff proposes that it should be construed as: <br><br> *Claims 19 and 32:* <br> Function: enabling a user to interact, within one or more World Wide Web pages, with at least part of one or more objects while at least part of each of one or more objects is displayed to the user within at least one of said one or more World Wide Web pages <br><br> Structure: an application, like those used in Figures 5, 6, 9, or 10, discussed in the specification at 8:45–11:2, 11:3–11:24, 16:17–36, or 16:37–55, and equivalents thereof <br><br> *Claim 45:* <br> Function: enabling a user to interact, within one or more World Wide Web pages, with at least part of one or more objects while at least part of each of said one or more objects is displayed to the user within at least one of said one or more World Wide Web pages <br><br> Structure: an application, like those used in Figures 5, 6, 9, or 10, discussed in the specification at 8:45–11:2, 11:3–11:24, 16:17–36, or 16:37–55, and equivalents thereof | Indefinite <br><br> or <br><br> Subject to 35 U.S.C. § 112(f) <br><br> *Claims 19 and 32:* <br> Function: (1) enabling a user to interact, within one or more World Wide Web pages, with at least part of one or more objects while at least part of each of one or more objects is displayed to the user within at least one of said one or more World Wide Web pages; and (2) operating as part of a distributed application <br><br> Corresponding Structure for Function: no structure disclosed for complete function, structure disclosed for part: for Function (1) application capable of communicating with the World Wide Web browser through the Mosaic/External Application Program Interface (MEAPI) described in the specification and Appendix B; for Function (2) none/indefinite <br><br> *Claim 45:* <br> Function: (1) enabling a user to interact, within one or more World Wide Web pages, with at least part of one or more objects while at least part of each of one or more objects is displayed to the user within at least one of said one or more World Wide Web pages; and (2) operating as part of the distributed interactive-content application <br><br> Corresponding Structure for Function: no structure disclosed for complete function, |

---

[1]For all of the constructions with an asterisk (*), the Plaintiff stated that "[t]his term does not need to be construed. However, should construction be deemed necessary, it should be construed according to its plain and ordinary meaning" and then provided a construction.

| | structure disclosed for part: for Function (1) application capable of communicating with the World Wide Web browser through the MEAPI described in the specification and Appendix B; for Function (2) none/indefinite |
|---|---|

Plaintiff argues that the term "interactive-content application" is clear and easily understood by the jury and does not require construction. Docket No. 168 at 7. Further, Plaintiff argues that if the Court does construe the term, the Court should give the term its plain and ordinary meaning as proposed by Plaintiff. *Id.* Plaintiff cites to the '507 Patent specification to highlight examples of interactive-content applications. *Id.* Plaintiff also points out that for a related patent "Judge Davis—consistent with the Federal Circuit's opinion in an earlier Eolas case—construed a similar term, 'executable application' to mean 'any computer program code, that is not the operating system or utility, that is launched to enable an end user to directly interact with data.' " *Id.* (citation omitted).

Defendants contend that the term is indefinite under 35 U.S.C. § 112(b) for two reasons. Docket No. 174 at 1. First, they argue that "interactive-content application" is not used in the specification and that it is a coined term, and therefore it must be defined by reference to the specification. *Id.* at 2. The Defendants then find that the scope of the term is undefined in the specification, making it indefinite. *Id.* They state that "the scope is indefinite because the specification and claims make[] it clear that 'applications' are not the same thing as 'interactive-content applications,' " but that the '507 Patent provides no way of distinguishing the terms. *Id.* Defendants also argue that the "interactive-content application" term turns on the degree of interactivity and that the '507 Patent does not clearly specify how much interactivity is enough to satisfy the claim limitation. *Id.* at 3. Second, Defendants argue that the term is a means-plus-function term because it is recited in the claims only by reference to what it does. *Id.* at 5. They

go on to find that the specification does not describe the specific structure to perform the recited functions, and that the claim term therefore is indefinite. *Id.*

Plaintiff replies that "interactive-content application" is not a coined term but rather was known to persons of ordinary skill in the art, as "shown via the claims, specification, and dictionaries of the early 1990s." Docket No. 179 at 1. Plaintiff also argues that this is not a term of degree. *Id.* at 2. Plaintiff states that "[w]hether an interactive-content application, as recited in the asserted claims, is interactive is a binary decision: can a user interact with the application within a Web browser or not?" *Id.* Further, Plaintiff urges that "[t]he term connotes structure: an application that allows a user to interact with content," and argues that "application" is not a "nonce" term. *Id.* at 3.

The claims give clear guidance that the "interactive-content application" enables a user to interact with content. '507 Patent at 22:7–9, 23:38–40, 25:18–19. Each of the asserted independent claims includes the language, "each said interactive-content application being configured to *enable a user to interact*." *Id.* (emphasis added). The specification also confirms that the "interactive-content application" enables a user to interact with content. *Id.* at 6:37–41, 6:57–62, 7:1–8, 9:54–59. The specification demonstrates that the application "allows" a user to interact with content, or that the user is "able" to interact with content, which supports that the "interactive-content application" enables a user to interact with content. *Id.*

Defendants have not shown that "interactive-content application" is a "coined" term. *See Intervet, Inc. v. Merial Ltd.*, 617 F.3d 1282, 1287 (Fed. Cir. 2010) ("Idiosyncratic language, highly technical terms, or terms coined by the inventor are best understood by reference to the specification.") (citing *Phillips*, 415 F.3d at 1315). Instead, evidence shows that interactivity was a well-known concept at the relevant time. *See, e.g.*, '507 Patent at 3:51–58. Defendants'

argument that the '507 Patent does not delineate between an "application" and an "interactive-content application" is unpersuasive. As Defendants point out, the term "interactive-content application" is never used in the '507 Patent specification—which means that the specification would not use that term to distinguish from an "application" that is not interactive—however, the '507 Patent specification clearly recites applications that allow for interaction with content. *See, e.g.*, '507 Patent at 13:7–25.

Likewise, Defendants have failed to demonstrate that "interactive" is a term of degree that renders the claim scope subjective. Instead, whether an application is "interactive" depends upon the details of a particular implementation and is a factual question regarding infringement rather than a legal question for claim construction. *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007) ("The resolution of some line-drawing problems . . . is properly left to the trier of fact."); *see also Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318–19 (Fed. Cir. 2016). Defendants' reliance upon recital of word processor and spreadsheet applications in dependent claims, such as in Claims 28 and 30, to suggest that that a word processor or spreadsheet cannot be an "interactive-content application" is unpersuasive.

Finally, Defendants argue that during prosecution of the application leading to the '507 Patent, Plaintiff distinguished the invention from prior art by showing that the prior art was not interactive enough. Docket 174 at 4. However, the prosecution relied upon by Defendants does not say anything about the degree of interactivity, only that the prior art did not "*automatically-invoke[]* interactive-content application" as required by the claim limitation. *See* Docket No. 174, Ex. A, Feb. 3, 2015 Response at 6 (emphasis added). Additionally, the prosecution history referenced discusses other claim limitations besides the "interactive-content application." *See id.*

Though the notion of "interactive" may be broad and may apply to many different types of applications, Defendants have not demonstrated that the term is unclear.

Defendants have also failed to demonstrate that "interactive-content application" is a means-plus-function term. The claim term does not use the word "means." "[T]he failure to use the word 'means' . . . creates a rebuttable presumption . . . that § 112, para. 6 does not apply." *Williamson v. Citrix Online LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (internal quotation marks omitted). "When a claim term lacks the word 'means,' the presumption can be overcome and § 112, para. 6 will apply if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* at 1349 (citations and internal quotation marks omitted). *Williamson* stated that courts should "apply the presumption as we have done prior to *Lighting World* . . . ." *Id.*

Here, "interactive-content application" is not a "nonce" term, *see id.* at 1350, but rather connotes a class of "application" structures. *See, e.g.*, '507 Patent at 15:65–66 ("The present invention allows a user to have interactive control over application objects . . . ."); *see also id.* at 6:37–41, 6:59–62, 8:45–11:24, 13:19–25; *Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1338 (Fed. Cir. 2005) (affirming construction of "executable application" as meaning "any computer program code, that is not the operating system or a utility, that is launched to enable an end user to directly interact with data"). Also, surrounding claim language provides context as to the "inputs and outputs" and how an "interactive-content application" "interacts with other components . . . in a way that . . . inform[s] the structural character of the limitation-in-question or otherwise impart[s] structure." *Williamson*, 792 F.3d at 1351. In so finding, the Court applies long-standing principles articulated prior to the abrogated *Lighting World* decision. *See, e.g.*,

*Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004) ("[W]hen the structure-connoting term 'circuit' is coupled with a description of the circuit's operation, sufficient structural meaning generally will be conveyed to persons of ordinary skill in the art, and § 112 ¶ 6 presumptively will not apply"; noting "language reciting [the circuits'] respective objectives or operations"); *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003) ("While we do not find it necessary to hold that the term 'circuit' by itself always connotes sufficient structure, the term 'circuit' with an appropriate identifier such as 'interface,' 'programming' and 'logic,' certainly identifies some structural meaning to one of ordinary skill in the art."); *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998) ("Even though the term 'detector' does not specifically evoke a particular structure, it does convey to one knowledgeable in the art a variety of structures known as 'detectors.' We therefore conclude that the term 'detector' is a sufficiently definite structural term to preclude the application of § 112, ¶ 6."); *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) (finding that "detent mechanism" was not a means-plus-function term because it denotes a type of device with a generally understood meaning in the mechanical arts)[2]; *Affymetrix, Inc. v. Hyseq, Inc.*, 132 F. Supp. 2d 1212, 1232 (N.D. Cal. 2001) (finding that " 'computer code' is not a generic term, but rather recites structure that is understood by those of skill in the art to be a type of device for accomplishing the stated functions").

---

[2] *Greenberg*, 91 F.3d at 1583 (" '[D]etent' denotes a type of device with a generally understood meaning in the mechanical arts, even though the definitions are expressed in functional terms."); *id.* ("It is true that the term 'detent' does not call to mind a single well-defined structure, but the same could be said of other commonplace structural terms such as 'clamp' or 'container.' What is important is not simply that a 'detent' or 'detent mechanism' is defined in terms of what it does, but that the term, as the name for structure, has a reasonably well understood meaning in the art.")

Defendants cite *Advanced Ground Information Systems, Inc. v. Life360, Inc.*, 830 F.3d 1341 (Fed. Cir. 2016), which applied means-plus-function treatment to the term "symbol generator." *See id.* at 1348. The court in *Advanced* reasoned that "[i]rrespective of whether the terms 'symbol' and 'generator' are terms of art in computer science, the *combination* of the terms as used in the context of the relevant claim language suggests that it is simply an abstraction that describes the function being performed (i.e., the generation of symbols)." *Id.* On balance, Defendants have not persuasively shown that the disputed term is analogous to "symbol generator" or that the constituent term "application" is analogous to the term "generator."

For the above reasons, Defendants failed to overcome the rebuttable presumption against "interactive-content application" being a means-plus-function term. The parties also dispute what structure, if any, is cited in the '507 Patent specification that performs the function of the term. However, because the Court does not find that it is a means-plus-function term, it will not address these arguments.

Accordingly, the Court construes "interactive-content application" as "application that enables a user to interact with content."

2. **"distributed application" (used at least in asserted claims 19, 32, 45 and dependents thereof); "distributed interactive-content application" (used at least in asserted claims 19, 32, 45 and dependents thereof)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| First term: "an application that is capable of being broken up and performed among two or more computers"<br><br>Second term: "an interactive-content application that is a distributed application"* | For both terms: Indefinite |

Plaintiff submits that its proposals are consistent with the Court's prior construction of "distributed application," and argues that the meaning of the term is clear from the context of the

claims. Docket No. 168 at 13. Plaintiff adds that the specification provides more context in understanding the term for a person skilled in the art. *Id.* Plaintiff argues that "in light of the claims, specification, and 'interactive-content application' and 'distributed application' already being construed, a person of ordinary skill in the art would be reasonably certain as to the scope of "distributed interactive-content application.' " *Id.* at 14. Plaintiff also notes that indefiniteness was not argued in *Eolas I*. *Id.*

Defendants respond that these are "coined" terms, and "because the claims' use of the coined terms 'distributed application' and 'distributed interactive-content application' is never explained in the specification, one of ordinary skill in the art has no ability to draw lines to distinguish between them." Docket No. 174 at 11–12. Defendants also state that it is illogical "for both the 'distributed application' and the 'interactive-content' application to be 'part of' a 'distributed interactive-content application.' " *Id.* at 12. Then Defendants contend that neither the claims nor the specification explain how an application can "be a part of" another application. *Id.* Defendants also argue that the specification discusses distributing tasks, not applications. *Id.* at 14.

Plaintiff replies that "[t]he claims describe the meaning of the terms through discussion of the interaction between all elements, and the specification (*e.g.*, Fig. 6) provides additional support." Docket No. 179 at 4. Plaintiff also argues that *Eolas I* construed "distributed application" "without any argument about whether the term is 'coined.' " *Id.*

In their sur-reply, Defendants reiterate their argument that the disclosures in the '507 Patent demonstrate that the "distributed applications" are multiple copies of the same application that perform portions of tasks on more than one computer. *Id.* at 182-1 at 3. Defendants add that

Plaintiff's expert provides no support "as to why one would consider two applications to be a 'distributed application.' " *Id.*

The independent asserted claims of the '507 Patent make it clear that the "distributed application" is broken up and performed among two or more computers. '507 Patent at 22:30–36, 23:61–66, 24:64–66. Claims 19 and 32 state that the "distributed application [is] configured to enable a user to *perform* the interaction," as well as that the "distributed application [is] *located on two or more* distributed application *computers*." *Id.* at 22:30–36, 23:61–66 (emphasis added). Additionally, the specification supports the construction that the distributed application is broken up on two or more computers. *Id.* at Fig. 6, Fig. 10, 7:1–6. The specification states that "[i]n one application, high resolution three dimensional images are processed in a distributed manner by *several computers* located remotely from the user's client computer." *Id.* at 7:1–6 (emphasis added). Therefore, the claims and specification support that the "distributed application" means "an application that is capable of being broken up and performed among two or more computers."

Defendants have not persuasively shown that the disputed term is a "coined" term. *See Intervet*, 617 F.3d at 1287. Instead, the concept of "distributed" appears to have been well-understood in the relevant art at the relevant time. *See, e.g.*, '507 Patent at 11:3–24, 16:37–55. Additionally, there was no challenge in this regard in *Eolas I*.[3] *See* 810 F. Supp. 2d at 808–09. As to Defendants' argument that the specification discusses distributing tasks, not applications, the specification sufficiently discloses that the operations performed by a particular application, not necessarily the program code of the application, are distributed. *See* '507 Patent at 11:3–24. For the above reasons, Defendants have failed to carry their burden of proving indefiniteness.

---

[3] In *Eolas 1*, for a patent related to the '507 Patent, Judge Davis construed the term "distributed application" to mean "an application that is capable of being broken up and performed among two or more computers." 810 F. Supp. 2d at 808–09. During that litigation, Defendants Amazon and Google did not claim the term was indefinite. *See id.*

Plaintiff's proposed construction is also not acceptable. If the Court finds that a "distributed application" is merely "capable" of being broken up, the construction would effectively eliminate the limitation of "distributed" and is therefore rejected. Accordingly, the Court construes "distributed application" as "an application that is broken up and performed among two or more computers," and construes "distributed interactive-content application" as "an interactive-content application that is broken up and performed among two or more computers."

3. **"wherein the automatically invoked interactive-content application has been configured to operate as part of a distributed application" (used at least in asserted claims 19, 32 and dependents thereof); "wherein the automatically invoked interactive-content application has been configured to operate as part of a distributed interactive-content application" (used at least in asserted claim 45)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "the automatically invoked interactive-content application has been enabled to operate as part of a distributed [interactive-content] application"* | For both terms: Indefinite |

Plaintiff argues that the meaning of these disputed terms is clear from the context of the claims as well as the constructions of constituent terms. Docket No. 168 at 15. Plaintiff states that Figures 6 and 10 in the '507 Patent and the corresponding discussion in the specification make it clear what it means for an application to be a part of a distributed application. *Id.* at 16.

Defendants respond that "neither the claims nor the specification explains what it means for an application to 'be a part of' another application, or how 'a part' of an application can be 'part of' another application as the claims require." Docket No. 174 at 12. They argue that Figure 6 in the '507 Patent specification shows "distributed applications" as separate from one another. *Id.*

Plaintiff replies that "[i]t makes sense for the 'distributed application' at a coordinating computer and an 'interactive-content application' at [a] client computer to be part of a larger 'distributed interactive-content application'—as in Figure 6, distributed portions of applications are found remote from the client, which might have an interactive-content application, but together they make up a distributed interactive-content application." Docket No. 179 at 5.

No construction is necessary for these terms because claim construction "is not an obligatory exercise in redundancy." *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *Id.* Defendants fail to convincingly argue that the claim scope of the terms is ambiguous. Conversely, Plaintiff persuasively argues that "it is clear what it means for an application to be 'part of' another application—an application can be considered an application in its own right but also as performing work in a larger application." Docket No. 179 at 5. Plaintiff's proposal of "enabled to," however, is rejected as tending to confuse rather than clarify the scope of the claims. Accordingly, the Court construes the terms to have their plain meaning.

### 4. "at least part of the distributed application has been implemented to be part of a distributed interactive-content application" (used at least in asserted claim 45)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "at least part of the distributed application is part of a distributed interactive-content application"* | Indefinite |

The arguments and analysis for this term are substantially similar to the arguments and analysis above. *Supra* at Section 3. Accordingly, the Court construes the term to have its plain meaning.

### 5. "automatically invoke" (used at least in asserted claims 19, 32, 45 and dependents thereof)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "launch without user activation"* | "launch without any user action" |

Plaintiff argues that this disputed term is clear on its face. Docket No. 168 at 11. Alternatively, Plaintiff submits that "launch without user activation" is consistent with the Court's prior construction of a similar term in a related patent. *Id.* Plaintiff also argues that Defendants' present proposal is confusing. *Id.* at 12. Plaintiff suggests that it is unclear whether starting a computer, opening a Web browser or visiting a web page would constitute a "user action." *Id.*

Defendants respond that Plaintiff is attempting to encompass a user's mouse click as "automatically invok[ing]" the interactive-content application, and Defendants argue that Plaintiff's contention is inconsistent with Plaintiff's position during prosecution and in *Eolas I*, as well as the Court's analysis in *Eolas I*. Docket No. 174 at 15–18.

Plaintiff replies that "Defendants' noninfringement arguments regarding clicks are incorrect and premature," and "Defendants' references to [Plaintiff's] infringement contentions confuses automatic invocation with [Plaintiff] showing that Defendants' 'interactive-content applications' are interactive (including through user interaction)." Docket No. 179 at 6.

For a patent related to the '507 Patent, Judge Davis construed the terms "automatically [invoking/invoke] [the/said] executable application" to mean "the executable application is launched without user activation." *Eolas*, 810 F. Supp. 2d at 804, *aff'd sub nom. Eolas Techs. Inc. v. Amazon.com, Inc.*, 521 F. App'x 928 (Fed. Cir. 2013). Because Judge Davis construed the term "executable application" separately, the result of his construction was to construe the "automatically [invoking/invoke]" language. *Id.* at 800. This is the same language at issue in the

'507 Patent, and Judge Davis's construction applied to a patent that shares the same specification as the '507 Patent. Judge Davis reasoned that the prosecution history of a patent related to the '507 Patent supported the construction. *Id.* at 803–04. Defendants have not justified departing from the *Eolas I* construction. *Id.* at 804. Defendants support their construction by stating that Plaintiff is improperly attempting to include mouse-clicks in Plaintiff's construction. In light of Plaintiff's statement that Defendants have misinterpreted Plaintiff's infringement contentions, no further claim construction analysis is necessary. Accordingly, the Court construes "automatically invoke" as "launch without user activation."

6. **"a World Wide Web browser on a client computer connected to the World Wide Web distributed hypermedia network has been configured with a plurality of different interactive-content applications" (used at least in asserted claims 19, 32 and dependents thereof); "the World Wide Web browser has been configured with a plurality of different interactive-content applications" (used at least in asserted claim 45)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| First term: "an application that allows a user to navigate the content and services on the World Wide Web using Uniform Resource Identifiers, Uniform Resource Locators, the Hypertext Transfer Protocol, and the Hypertext Markup Language on a client computer connected to the World Wide Web distributed hypermedia network has been enabled to present more than one interactive-content application to the user"* <br><br> Second term: "the application that allows a user to navigate the content and services on the World Wide Web using Uniform Resource Identifiers, Uniform Resource Locators, the Hypertext Transfer Protocol, and the Hypertext Markup Language has been enabled to present more than one interactive-content application to the user"* | For both terms: "has been programmed with a set of two or more predetermined interactive-content applications prior to launching any of these applications"[4] |

---

[4]Defendants only construe the "has been configured with a plurality of different interactive-content applications" language.

Plaintiff argues that these terms are clear in the context of the claims, and Plaintiff submits that "configured" simply means "enabled." Docket No. 168 at 20. As to Defendants' proposals, Plaintiff submits that the word "programmed" is not found anywhere in the specification and that it is unclear what Defendants mean by it. *Id.* Plaintiff also argues that Defendants' proposals of "programmed" and "predetermined" lack support in the intrinsic record. *Id.* at 20–21. Additionally, Plaintiff states that Defendants' "prior to launching" language is an attempt to add a temporal limitation to the claim term. *Id.* at 21.

Defendants respond that the claim language supports Defendants' proposal rather than Plaintiff's because "[t]he use of the past tense—'been'—means that the browser must already have the interactive-content applications." Docket No. 174 at 19. Defendants also contend that "[Plaintiff's] argument—that the selected and launched application may be 'already running' ([Docket No. 168 at] 21)—is contrary to both the intrinsic evidence and [Plaintiff's] previous positions that 'launching' refers to beginning or starting." *Id.* at 21. Defendants cite embodiments in the specification to demonstrate that the claim term has a temporal limitation. *Id.* at 20. They then accuse Plaintiff's proposed construction of ignoring the temporal requirement. *Id.* at 21.

Plaintiff replies that its proposals "do[] not re-write temporal aspects of the claims." Docket No. 179 at 6. Plaintiff also argues that Defendants' proposals improperly limit the claims to a single disclosed embodiment. *Id.* at 7.

The constituent term "World Wide Web browser" is addressed separately, below, and need not be re-construed as to the present disputed terms. *Supra* at Section 8.

No construction is necessary for these terms because claim construction "is not an obligatory exercise in redundancy." *See U.S. Surgical*, 103 F.3d at 1568. "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to

explain what the patentee covered by the claims, for use in the determination of infringement." *Id.* Therefore, the Court construes the claim terms to have their plain meaning.

Defendants have not adequately justified their proposal of "programmed." It is not enough that Plaintiff has suggested that a "browser" is a type of program. That is, Defendants have not shown that the disputed terms require arranging program code rather than simply adjusting program settings. *See* '507 Patent at 15:19–20 ("user-defined list"). Although the specification refers to launching a "predetermined application" (*id.* at 15:17–18), this predetermination is a specific feature of a particular disclosed embodiment that should not be imported into the claims. *See Phillips*, 415 F.3d at 1323. Further, as to Defendants' proposal of "prior to launching," Defendants have not shown that the browser cannot, for example, select an application that is already running in the background. *See* '507 Patent at 8:66–9:2 (referring to "a 'terminate and stay resident' (TSR) program," that is in the background). Of particular note, Defendants have not shown that "automatically invoking," as used in the claims, is necessarily limited to "launching." Finally, Defendants emphasize that the phrase "has been configured" is past tense, but this is evident from the claim language itself and does not require construction.

Therefore, the Court rejects Defendants' proposed constructions. The Court also rejects Plaintiff's suggestion of "enabled to," which might be interpreted too broadly as merely an ability to be configured (rather than actual configuration). Accordingly, the Court construes the claim terms to have their plain meaning.

7. **"the World Wide Web browser has been configured to select an interactive-content application, based upon the information, from among the different interactive-content applications" (used at least in asserted claims 19, 32, 45 and dependents thereof)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "the application that allows a user to navigate the content and services on the World Wide Web using Uniform Resource Identifiers, Uniform Resource Locators, the Hypertext Transfer Protocol, and the Hypertext Markup Language that has been enabled to, based upon the information, choose an interactive-content application from among the different interactive-content applications"* | "the World Wide Web browser has been programmed to, based upon the information, choose an interactive-content application from the set of two or more predetermined interactive-content applications" |

The arguments and analysis for this term are substantially similar to the arguments and analysis above. *Supra* at Section 6. Accordingly, the Court construes the term to have its plain meaning.

8. **"World Wide Web browser on a client computer" (used at least in asserted claims 19, 32 and dependents thereof); "client computer containing a World Wide Web browser" (used at least in asserted claim 45)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| First term: "an application on a user computing device that allows a user to navigate the content and services on the World Wide Web using Uniform Resource Identifiers, Uniform Resource Locators, the Hypertext Transfer Protocol, and the Hypertext Markup Language"*<br><br>Second term: "user computing device that includes an application that allows a user to navigate the content and services on the World Wide Web using Uniform Resource Identifiers, Uniform Resource Locators, the Hypertext Transfer Protocol, and the Hypertext Markup Language"* | For both terms: "process, separate from the interactive-content application, that a user of client computer invokes in order to access various data objects, such as hypermedia documents, on a network" |

Plaintiff argues that Defendants' proposal should be rejected because "it covers general media browsers that are not World Wide Web browsers." Docket No. 168 at 17. Plaintiff urges

that "a Web browser refers to something able to do something more than access 'hypermedia documents'—it refers to something able to navigate the Web." *Id.* at 18. Plaintiff also argues that Defendants' proposal of "process" ignores that "the patent refers to a 'browser' as an 'application,' 'software,' and 'program.' " *Id.* (citations omitted). Plaintiff states that Defendants read "World Wide Web" out of the claim terms. *Id.*

Defendants argue that the specification and claims requires that the "browser" is a process and must be separate and distinct from the "interactive-content application." Docket No. 174 at 22. Defendants also contend that Plaintiff's proposal attempts to improperly limit the claim term to particular standards. *Id.*

Plaintiff replies that Defendants' proposal of "process" would improperly limit the claims to particular disclosed embodiments. Docket No. 179 at 8. Further, Plaintiff argues, Defendants' proposal of "separate" is "unnecessary and confusing." *Id.*

In *Eolas I*, the Court construed "browser application" to mean "a client program that displays and responds to user interaction with hypermedia documents." 2012 WL 369265, at *3. The specification discusses hypermedia documents in the context of Hypertext Markup Language (HTML). *See* '507 Patent at 1:56–62, 2:46–49, 5:22–35 ("An example of an open distributed hypermedia system is the so-called 'world-wide web' implemented on the Internet and discussed in papers such as the Berners-Lee reference given above."); *see also id.* at 9:4–7. Nonetheless, Plaintiff has not shown that the construction of "World Wide Web browser" should set forth particular protocols commonly associated with the "World Wide Web." In other words, Plaintiff has not sufficiently shown that the parties have a dispute as to what the "World Wide Web" is. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)

("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.").

Defendants' proposal of requiring a "process" may improperly introduce a temporal limitation that the browser must actually be executing and could improperly limit the term to particular types of operating systems that use "processes." Instead, the specification also refers to a browser as being an "application." *See, e.g.*, *id.* at 3:11–27, 11:53–63.

Defendants' proposal that the browser must be "separate from the interactive-content application," however, finds support in the context of the claims themselves. *Phillips*, 415 F.3d at 1314 ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."). Claim 19 of the '507 Patent, for example, recites in relevant part: "(iii) the World Wide Web browser has been configured to: a. select an interactive-content application, based upon the information, from among the different interactive-content applications . . . ." This also appears to be consistent with Plaintiff's position in *Eolas I. See* Docket No. 174-10 at 6.

Accordingly, the Court construes "World Wide Web browser on a client computer" as "a client computer application, separate from the interactive-content application, that allows a user to access the World Wide Web," and construes "client computer containing a World Wide Web browser" as "client computer containing an application, separate from the interactive-content application, that allows a user to access the World Wide Web."

**9. "at least one task" (used at least in asserted claims 21, 24, 34, 37, 45 and dependents thereof)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A "task" is "some or all of the work performed by an application"* | Indefinite |

Plaintiff argues that the term is clear in the context of the claims, and that the specification confirms the clear meaning. Docket No. 168 at 27. Plaintiff states that "[t]his

evidences to a person of ordinary skill in the art that a 'task' refers to work performed by an application." *Id.* at 28.

Defendants respond that "[t]he phrase 'at least one task' is indefinite because there is no clarity as to which tasks can be performed by part of the distributed application as required by the claims." Docket No. 174 at 24. Defendants accuse Plaintiff's proposed construction of being intentionally vague without any explanation of what "work" is covered by the claim. *Id.* Additionally, Defendants contend that Plaintiff's proposed construction for "task" in conjunction with its proposed construction for "distributed application" (that an application is "capable" of being broken up) would potentially cover everything done by a computer because "tasks" would not have to be broken up, just capable of being broken up. *Id.* at 25.

Plaintiff replies that "Google and Amazon apparently understood the meaning of 'task' when putting it in their proposed construction of 'distributed application' before Judge Davis." Docket No. 179 at 9 (internal citation omitted).

The claims and the specification use the term "task" broadly, such as to refer to operations related to word processors, databases, spreadsheets, video applications or three-dimensional image display. *See* '507 Patent at 6:37–41, 7:3–6, 7:23–32. Such tasks may be "broken up" for processing by multiple computers. *Id.* at 11:7–10. Defendants have not shown, however, that the term "task" necessarily refers only to tasks that can be broken up in this manner. Also, Defendants have not demonstrated that the claim term is indefinite. Accordingly, the Court construes "task" to have its plain meaning.

**10. "at least one or more coordination computers performs coordination" (used at least in asserted claims 21, 24, 34, 37 and dependents thereof); "coordinating by the one or more computers" (used at least in asserted claim 45)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "coordinate" means to "direct part of the communication among the computers running the distributed application"*<br><br>"coordination computer" means a "computer that coordinates"* | For both terms: Indefinite |

Plaintiff argues that these terms are clear on their face. Docket No. 168 at 21. Alternatively, Plaintiff submits that the claims and the specification demonstrate that coordination refers to directing communications among the computers running the distributed application. *Id.*

Defendants argue that "the specification provides no guidance as to how the infinite possible 'tasks' (whatever that is) a computer can perform would be coordinated. Instead, there are only conclusory statements of function without explanation as to how coordination should occur." Docket No. 174 at 24 (citing '507 Patent at 11:18–25). Additionally, Defendants contend that the claims, even within the context of the specification, fail to reasonably notify one skilled in the art about the scope of the invention and are indefinite. *Id.* at 24–25. Defendants also state that Plaintiff's proposed constructions demonstrate that the terms are indefinite. *Id.* at 25. They point out that Plaintiff's proposed construction uses the word "direct" which is not found in the specification and "provides no clarity to the claims." *Id.* at 25.

Plaintiff replies that "[w]hile Defendants note that 'direct' is not in the specification, the specification, for example Figure 10, plainly shows coordination computer [] directing communication among the computers running portions of the distributed application." Docket No. 179 at 9.

Defendants did not persuasively argue that the terms are indefinite in the face of the intrinsic evidence. Likewise, based on the intrinsic evidence, Plaintiff has not persuasively argued that its proposed construction is correct, or that the terms need no construction. For context, the term "at least one or more coordination computers performs coordination" appears in Claim 21 of the '507 Patent, which depends from Claim 20 (which in turn depends from independent Claim 19). Claim 21 recites, "The server computer of claim 20, wherein at least one or more coordination computers performs coordination of at least part of the distributed application to perform at least one task." The language of Claim 45 helps to show that the "coordination" in the claims require that the computers "work together." Claim 45 of the '507 Patent recites a step of "generating and sending by the one or more computers commands over a network to *coordinate activity of the separate computers working together* to perform viewing transformations to enable the interaction with at least part of the object." '507 Patent at 25:7–9 (emphasis added). Further, the language from the specification also makes it clear that the '507 Patent intended for the coordination among computers to require the computers to work together. The specification discloses:

> In the present[] example, tasks such as volume rendering may be broken up and easily performed among two or more computers. These computers can be remote from each other on network 206. Thus, several computers, such as server computer 204 and additional computers 222 and 224 can all *work together* to perform the task of computing a new viewpoint and frame buffer for the embryo for the new orientation of the embryo image in the present example. The coordination of the distributed processing can be performed at client computer 200 by application client 210, at server computer 204 by application server 220, or by any of the distributed applications executing on additional computers, such as 222 and 224. In a preferred embodiment, distributed processing is coordinated by a program called "VIS" represented by application client 210 in FIG. 6.

'507 Patent at 11:9–24 (emphasis added).

Accordingly, the Court construes "at least one or more coordination computers performs coordination" as "at least one or more computers manage multiple computers so as to work together," and construes "coordinating by the one or more computers" as "managing multiple computers so as to work together."

**11. Antecedent Basis Terms: "information" / "the information" (used at least in claims 19, 32, 45 and dependents thereof); "object" / "the object" (used at least in claims 19, 32, 45 and dependents thereof); "World Wide Web page" / "the World Wide Web page" (used at least in claims 19, 32, 45 and dependents thereof); "an interactive-content application" / "the selected interactive-content application" / "the automatically invoked interactive-content application" (used at least in claims 19, 32, 45 and dependents thereof); "a distributed application" / "the distributed application" (used at least in claims 19, 32, 45 and dependents thereof); "a plurality of interactive content applications" / "the different interactive content applications" (used at least in claims 19, 32, 45 and dependents thereof); "a distributed interactive-content application" / "the distributed interactive content application" (used at least in claim 45)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| no construction necessary | "information" and "the information" are the same information |
| | "an object" and "the object" are the same object |
| | "a World Wide Web page" and "the World Wide Web page" are the same World Wide Web page |
| | "an interactive-content application," "the selected interactive-content application," and "the automatically invoked interactive-content application" are the same interactive-content application |
| | "a distributed application" and "the distributed application" are the same distributed application |
| | "a plurality of interactive-content applications" and "the different interactive-content applications" are the same set of interactive-content applications |

| | "a distributed interactive-content application" and "the distributed interactive-content application" are the same distributed interactive-content application |
|---|---|

Plaintiff argues that "Defendants' proposals go beyond claim construction by arguing how construed terms must be applied—that is, what aspect of Defendants' accused features meet (or do not meet) claim elements." Docket No. 168 at 30. Plaintiff contends that no claim construction dispute exists. *Id.* at 29.

Defendants respond that "where such terms are first introduced with 'a,' 'an,' or with no article at all, and then later used with 'the,' the latter term must be referring to the former term, as set forth in Defendants' proposed constructions." Docket No. 174 at 26. Defendants argue that the terms would lack proper antecedent basis if they are not construed in this manner. *Id.*

Because the parties do not appear to have any substantive dispute with respect to claim construction, the Court need not construe these terms. Instead, it is sufficient that Plaintiff does not oppose Defendants' use of antecedent basis here. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1306 (Fed. Cir. 2005). Accordingly, the Court construes the terms to have their plain meaning.

### 12. "viewing transformations" (used at least in claims 23, 36, 45 and dependents thereof)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "operations performed on data for presentation to a user"* | "calculations to rotate, scale, and otherwise reposition the viewpoint of image data" |

Plaintiff argues that "[t]he plain meaning of this term, based on the claims and specification, is clear," and "Defendant[s'] proposed construction, on the other hand, is but one embodiment." Docket No. 168 at 23–24. Plaintiff also contends that the Microsoft Press Dictionary's definition for "transform" supports Plaintiff's proposed construction. *Id.* at 23.

Defendants respond that "[e]very reference to 'viewing transformations' in the specification is consistent with Defendants' proposed construction." Docket No. 174 at 27 (citations omitted). Further, Defendants argue the words "viewing transformations" themselves are consistent with Defendants' construction because they refer "to transformations of the viewpoint." *Id.* at 28. Defendants also contend that extrinsic definitions of the term support their proposed construction. *Id.* Additionally, Defendants state that Plaintiff's construction "substitutes the word 'transformation' with the more vague 'operations,' without any explanation of what an 'operation' is.' " *Id.*

Plaintiff replies that Defendants improperly attempt to limit this term to a particular disclosed embodiment in the absence of any lexicography or disclaimer. Docket No. 179 at 10. Plaintiff also argues that "[t]he claims and specification specifically and repeatedly equate 'viewing transformations' with 'operations performed on a data for presentation to a user." *Id.*

Defendants have not demonstrated that "viewing transformations" necessarily refers to a change of "viewpoint" rather than to some other type of change in what is displayed to a user. The *Microsoft Press Computer Dictionary* defines "transform" as meaning:

> "In general, to change the appearance or format of data without altering its content—for example, to encode information according to predefined rules. In mathematics and computer graphics, transform means to alter the position, size, or nature of an object by moving it to another location (translation), making it larger or smaller (scaling), turning it (rotation), changing its description from one type of coordinate system to another, and so on."

*See* Docket No. 168, Ex. J, *Microsoft Press Computer Dictionary*, 394 (2d ed. 1994) (emphasis omitted). Also, Defendants have not shown that the claim should be limited to rotation, scaling or otherwise repositioning the viewpoint of the data. Although the specification discloses manipulation of multidimensional data, this is a specific feature of a particular disclosed

embedment that should not be imported into the claims. *See Phillips*, 415 F.3d at 1323; '507 Patent at 5:53–61, 7:1–14, 9:34–35, 9:51–53, 10:34–57.

Nonetheless, "some construction of the disputed claim language will assist the jury to understand the claims." *See TQP Dev., LLC v. Merrill Lynch & Co., Inc.*, Cause No. 2:08-CV-471, 2012 WL 1940849, at *2 (E.D. Tex. May 29, 2012). Whereas Plaintiff's proposed construction refers to "presentation to a user," the above-cited disclosures and the specification as a whole demonstrate that "viewing" refers to visually displaying information to a user. Accordingly, the Court construes "viewing transformations" as "operations performed on data for visual display to a user."

### 13. "the results of the computations" (used at least in claims 27, 40 and dependents thereof)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| "information resulting from performing work on the task"* | Indefinite |

Plaintiff argues that the term is clear when read in the context of the surrounding claim language and the specification. Docket No. 168 at 27. Plaintiff contends that the "results of the computation" refers to the result of performing "the at least one task." *Id.* at 28.

Defendants respond that the term lacks antecedent basis and thus renders the claim scope indefinite. Docket No. 174 at 29. Defendants argue that when the term is read within its claim, and all of the claims it depends from, "it is unclear what possible computations of the 'distributed application computers' are being referred to." *Id.* Also, Defendants state that "the 'computations' may relate [] to the 'interaction' and 'communication' that the 'distributed application [is] configured to enable' recited in claim 19," in addition to "the at least one task" that the Plaintiff states the "computations" relate to. *Id.* Defendants also argue that it is unclear if

the "distributed application computers," the "client computer" or the "coordination computers" may be performing the computations. *Id.*

The term "the results of the computations" appears in Claim 27, which depends from Claim 26, which depends from Claim 25, which depends from Claim 24, which depends from independent Claim 19. The term also appears in Claim 40, which depends from Claim 39, which depends from Claim 38, which depends from Claim 37, which depends from independent Claim 32. Claims 26, 27, 39 and 40 recite:

> 26. The server computer of claim 25, wherein: the two or more of the distributed application computers work together to *perform the at least one task*.

> 27. The server computer of claim 26, wherein: the distributed application computers transmit *the results of the computations* onto the World Wide Web distributed hypermedia network for display in the hypermedia document.

> * * *

> 39. The method of claim 38, wherein: the two or more of the distributed application computers work together to *perform the at least one task*.

> 40. The method of claim 39, wherein: the distributed application computers transmit *the results of the computations* onto the World Wide Web distributed hypermedia network for display in the hypermedia document.

'507 Patent at 23:1–7, 24:30–36 (emphasis added).

As a general matter, antecedent basis can be implicit rather than explicit. *See Energizer Holdings Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1371 (Fed. Cir. 2006) (holding that "an anode gel comprised of zinc as the active anode component" provided implicit antecedent basis for "said zinc anode"); *see also Ex Parte Porter*, 25 U.S.P.Q. 2d 1144, 1145 (B.P.A.I. 1992) ("The term 'the controlled fluid' . . . finds reasonable antecedent basis in the previously recited 'controlled stream of fluid. . . .'"). In this regard, Plaintiff has also cited *United Video Properties, Inc. v. Amazon.com, Inc.*, No. 11-003-RGA, 2012 WL 2370318, at *14 (D. Del. June 22, 2012),

*aff'd*, 561 F. App'x 914 (Fed. Cir. 2014), and *Intellectual Ventures II LLC v. BITCO General Insurance Corp.*, Nos. 6:15-CV-59, -60, slip op. at 31–32, 2016 WL 125594 (E.D. Tex. Jan. 11, 2016) to demonstrate that a lack of antecedent basis is not always fatal. Docket No. 168 at 28–29.

The Plaintiff's cited law does not require that the claim term is definite. The specification does refer to a spreadsheet program calculating "results." *See* '507 Patent at 7:23–32. However, none of the claims at issue refer to "results" or "computations" apart from the disputed term "the results of the computations." Although the "task" recited in Claims 26 and 39 might involve computations that could produce results, the specification uses "task" broadly, as noted above. *Supra* at Section 9. Further, the term at issue appears in dependent claims, and the claims from which those claims depend recite other limitations that might be deemed to include "computations." For example, Claim 24 recites "coordination" performed by "coordination computers," and that coordination may require computations. *Nautilus* requires reasonable certainty, not merely that a possible interpretation can be found. *See Nautilus*, 134 S. Ct. at 2129.

Accordingly, the Court finds that the claim term "the results of the computations" is indefinite.

**So ORDERED and SIGNED this 8th day of December, 2016.**


ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE

## APPENDIX A

| Claim Term | Court's Construction |
|---|---|
| "interactive-content application"<br><br>(used at least in asserted claims 19, 32, 45 and dependents thereof) | "application that enables a user to interact with content" |
| "distributed application"<br><br>(used at least in asserted claims 19, 32, 45 and dependents thereof) | "an application that is broken up and performed among two or more computers" |
| "distributed interactive-content application"<br><br>(used at least in asserted claims 19, 32, 45 and dependents thereof) | "an interactive-content application that is broken up and performed among two or more computers" |
| "wherein the automatically invoked interactive-content application has been configured to operate as part of a distributed application"<br><br>(used at least in asserted claims 19, 32 and dependents thereof)<br><br>"wherein the automatically invoked interactive-content application has been configured to operate as part of a distributed interactive-content application"<br><br>(used at least in asserted claim 45) | For both terms:<br>plain meaning |
| "at least part of the distributed application has been implemented to be part of a distributed interactive-content application"<br><br>(used at least in asserted claim 45) | plain meaning |
| "automatically invoke"<br><br>(used at least in asserted claims 19, 32, 45 and dependents thereof) | "launch without user activation" |

| | |
|---|---|
| "a World Wide Web browser on a client computer connected to the World Wide Web distributed hypermedia network has been configured with a plurality of different interactive-content applications"<br><br>(used at least in asserted claims 19, 32 and dependents thereof)<br><br>"the World Wide Web browser has been configured with a plurality of different interactive-content applications"<br><br>(used at least in asserted claim 45) | For both terms:<br>plain meaning |
| "the World Wide Web browser has been configured to select an interactive-content application, based upon the information, from among the different interactive-content applications"<br><br>(used at least in asserted claims 19, 32, 45 and dependents thereof) | plain meaning |
| "World Wide Web browser on a client computer"<br><br>(used at least in asserted claims 19, 32 and dependents thereof) | "a client computer application, separate from the interactive-content application, that allows a user to access the World Wide Web" |
| "client computer containing a World Wide Web browser"<br><br>(used at least in asserted claim 45) | "client computer containing an application, separate from the interactive-content application, that allows a user to access the World Wide Web" |
| "at least one task"<br><br>(used at least in asserted claims 21, 24, 34, 37, 45 and dependents thereof) | plain meaning |
| "at least one or more coordination computers performs coordination"<br><br>(used at least in asserted claims 21, 24, 34, 37 and dependents thereof) | "at least one or more computers manage multiple computers so as to work together" |
| "coordinating by the one or more computers"<br><br>(used at least in asserted claim 45) | "managing multiple computers so as to work together" |

| Antecedent Basis Terms: | For all terms: plain meaning |
|---|---|
| "information" / "the information"<br><br>(used at least in claims 19, 32, 45 and dependents thereof)<br><br>"object" / "the object"<br><br>(used at least in claims 19, 32, 45 and dependents thereof)<br><br>"World Wide Web page" / "the World Wide Web page"<br><br>(used at least in claims 19, 32, 45 and dependents thereof)<br><br>"an interactive-content application" / "the selected interactive-content application" / "the automatically invoked interactive-content application"<br><br>(used at least in claims 19, 32, 45 and dependents thereof)<br><br>"a distributed application" / "the distributed application"<br><br>(used at least in claims 19, 32, 45 and dependents thereof)<br><br>"a plurality of interactive content applications" / "the different interactive content applications"<br><br>(used at least in claims 19, 32, 45 and dependents thereof)<br><br>"a distributed interactive-content application" / "the distributed interactive content application"<br><br>(used at least in claim 45) | |

| | |
|---|---|
| "viewing transformations"<br><br>(used at least in claims 23, 36, 45 and dependents thereof) | "operations performed on data for visual display to a user" |
| "the results of the computations"<br><br>(used at least in claims 27, 40 and dependents thereof) | Indefinite |

| Claim Term | Agreed Construction |
|---|---|
| "object"<br><br>(used at least in claims 19, 32, 45 and dependents thereof) | "text, images, sound files, video data, documents and/or other types of information that is presentable to a user of a computer system" |
| "server computer comprising a processor; and a memory device which stores a plurality of instructions, which when executed by the processor, enables the server to"<br><br>(used at least in claim 19 and dependents thereof) | no construction necessary |